Jan Graham (01231)
Graham Law Offices
150 South 600 East, Suite 5B
Ambassador Plaza
Salt Lake City, UT  84102
Telephone:  (801) 596-9199
Facsimile:  (801) 596-9299
jan@grahamlawoffices.com

**Attorneys for Plaintiffs**
[Additional Counsel Listed On Signature Page]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

PAMELA MILLER, RANDY HOWARD and
DONNA    PATTERSON,    On    behalf    of
themselves and all others similarly situated,       **Civil Case No.: 2:07-cv-00871**

Plaintiffs,

v.                                                                **Honorable Ted Stewart**

BASIC    RESEARCH    LLC,    DYNAKOR
PHARMACAL,       LLC,        WESTERN
HOLDINGS, LLC, DENNIS GAY, DANIEL
B.    MOWREY,    Ph.D.,    MITCHELL    K.
FRIEDLANDER, and DOES 1 through 50,

Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...…………………………………………………….….. ii

I.   SUMMARY OF ARGUMENT ………………………………………………… 1

II.  FACTUAL BACKGROUND ……………………………………………………. 1

III. STANDARD OF REVIEW ……………………………………...………………. 3

IV.  ARGUMENT ……………………………………………………………………. 4

     A.   Plaintiffs Have Satisfied The Pleading Requirements Of Rule 9(b) …….. 4

     B.   Plaintiffs Have Stated Claims For Civil Racketeering Under RICO
          And UPUAA With Sufficient Particularity ………………………….... 7

     C.   Plaintiffs Have Alleged The RICO Predicate Acts And Defendants'
          Participation In The Scheme To Defraud Plaintiffs And Class
          Members With Particularity ……………………………………………… 10

V.   CONCLUSION ……………………………………………………………….... 14

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Albright v. Attorney's Title Ins. Fund,*
504 F. Supp. 2d 1187 (D. Utah 2007) ................................................................ 7, 8

*Alvarado v. KOB-TV, L.L.C.,*
493 F.3d 1210 (10th Cir.2007) ....................................................................... 3

*Andrews v. Heaton,*
483 F.3d 1070 (10th Cir. 2007) ...................................................................... 8

*BancOklahoma Mort. Corp. v. Capital Title Co.,*
194 F.3d 1089 (10th Cir. 1999) ...................................................................... 8

*Bell Atl. Corp. v. Twombly,*
___ U.S. ___, 127 S.Ct. 1955 (2007) .............................................................. 3

*Burbank v. U.S. District Court,*
2008 WL 170691 (D. Utah Jan. 16, 2008)......................................................... 9

*Catalan v. Vermillion Ranch Ltd. Partnership,*
2007 WL 38135 (D. Colo. Jan. 4, 2007) .......................................................... 12

*Cayman Exploration Corp. v. United Gas Pipe Line Co.,*
873 F.2d 1357 (10th Cir. 1989) .................................................................. 9, 14

*Converdyn v. Blue,*
2008 WL 167297 (D. Colo. Jan. 11, 2008) ....................................................... 5

*Dobson v. Anderson,*
2008 WL 183080 (E.D. Okla. Jan. 17, 2008) ..................................................... 8

*Elliott Assocs., L.P. v. Hayes,*
141 F. Supp. 2d 344 (S.D.N.Y. 2000) ............................................................ 11

*Erickson v. Pardus,*
___ U.S. ___, 127 S.Ct. 2197 (2007) .............................................................. 3

*Goldman v. Belden,*
754 F.2d 1059 (2d Cir.1985) ....................................................................... 11

*Graphic Techs., Inc. v. Pitney Bowes, Inc.*,
998 F. Supp. 1174 (D. Kan. 1998) ............................................................... 5

*Hansen v. Native Amer. Ref. Co.*,
2007 WL 1108776 (D. Utah Apr. 10, 2007) ........................................... 3, 8

*Internet Archive v. Shell*,
505 F. Supp. 2d 755 (D. Colo. 2007) ............................................................ 8

*Kay v. Bemis*,
500 F.3d 1214 (10th Cir. 2007) .................................................................... 3

*Koch v. Koch Indus., Inc.*,
203 F.3d 1202 (10th Cir. 2000) ................................................................. 4-5

*Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*,
924 F.2d 176 (10th Cir. 1991) ..................................................................... 5

*Levit v. Aweida (In re Storage Technology Corp. Securities Litigation)*,
630 F.Supp. 1072 (D. Colo. 1986) ......................................................... 11-12

*Liberty Mut. Ins. Co. v. Blessinger*,
2007 WL 951905 (E.D.N.Y. Mar. 27, 2007) ............................................. 12

*In re Livent, Inc. Secs. Litig.*,
78 F. Supp. 194 (S.D.N.Y. 1999) ............................................................... 12

*In re Lupron Mktg. & Sales Pracs. Litig.*,
295 F. Supp. 2d 148 (D. Mass. 2003) ........................................................ 13

*Manhattan Const. Co. v. Degussa Corp.*,
2007 WL 983084 (W.D. Okla. Mar. 29, 2007) ........................................... 5

*New England Data Svcs., Inc. v. Becher*,
829 F.2d 286 (1st Cir. 1987) ................................................................. 13-14

*In re Oxford Health Plans, Inc.*,
187 F.R.D. 133 (S.D.N.Y. 1999) ............................................................... 11

*In re Qwest Comm. Int'l, Inc. Secs. Litig.*,
387 F. Supp. 2d 1130 (D. Colo. 2005) ....................................................... 12

*Ridge at Red Hawk, L.L.C. v. Schneider*,
493 F.3d 1174 (10th Cir.2007) .................................................................... 3

*Rotella v. Wood*,
528 U.S. 549 (2000) ................................................................... 7-8

*Samuel v. Pace Membership, Inc.*,
686 F.Supp. 873 (D. Colo. 1988) ................................................ 11

*Schwartz v. Celestial Seasonings, Inc.*,
124 F.3d 1246 (10th Cir. 1997) ................................... 4, 5, 10-11

*Seattle-First Nat'l Bank v. Carlstedt*,
800 F.2d 1008 (10th Cir. 1986) ..................................................... 4

*Sedima S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985) ....................................................................... 8

*Tal v. Hogan*,
453 F.3d 1244 (10th Cir. 2006), *cert. denied,* ___ U.S. ___, 127 S. Ct. 1334 (2007) .............. 5

*United States v. Fire Ins. Co. v. United Limousine Svc., Inc.*,
303 F. Supp. 2d 432 (S.D.N.Y. 2004) ....................................... 12

*United States v. Turkette*,
452 U.S. 576 (1981) ....................................................................... 8

*Wool v. Tandem Computers, Inc.*,
818 F.2d 1433 (9th Cir. 1987) .................................................... 11

*Zito v. Leasecomm Corp.*,
2004 WL 2211650 (S.D.N.Y. Sept. 30, 2004) ........................... 10

## STATUTES

Fed. R. Civ. P. 8 ............................................................................ 4

Fed. R. Civ. 9(b) ................................................................... *passim*

Fed. R. Civ. P.12(b)(6) ................................................................. 3

18 U.S.C. §§ 1961-1968 ............................................................ 1, 8

U.C.A. 1953 § 13-11-1 to 23 ........................................................ 2

U.C.A. 1953 §§ 76-10-1601 to -1609 ......................................... 1-2

## I.    SUMMARY OF ARGUMENT

Plaintiffs, Pamela Miller, Randy Howard and Donna Patterson, by counsel, hereby file

their Opposition to the Motion to Dismiss filed by Defendants, Basic Research, LLC ("Basic

Research"), Dynakor Pharmacal, LLC ("Dynakor"), Western Holdings, LLC ("Western"),

Dennis Gay ("Gay"), Daniel B. Mowrey, Ph.D. ("Mowrey"), and Mitchell K. Friedlander

("Friedlander") (collectively, the "Defendants").

For the reasons stated herein, Defendants' Motion to Dismiss, which is limited to

challenging Plaintiffs' (a) supposed failure to plead their fraud-based claims with the

particularity required by Fed. R. Civ. P. 9(b) and (b) supposed failure to particularize allegations

of fraudulent statements as to each of the Defendants, should be denied and this case should

proceed with discovery and pretrial proceedings.[1]

## II.   FACTUAL BACKGROUND

This nationwide consumer protection class action seeks to redress the pervasive pattern of

fraudulent, deceptive and otherwise improper advertising and marketing practices that

Defendants have engaged in – and continue to engage in – with respect to a dietary supplement

called "Akävar 20/50" ("Akävar"), purportedly designed to cause weight loss and improve

bodily appearance.  CAC ¶ 1.  Plaintiffs, suing on behalf of themselves and the members of the

Class, assert claims against Defendants for violations of (a) the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968; (b) Utah's Pattern of Unlawful

---

[1]    Paragraph references to Plaintiffs' Class Action Complaint (the "Complaint") (Docket # 2) are stated herein as "CAC ¶ __" or "¶ __." Page references to the Memorandum in Support of Defendants' Motion to Dismiss (Docket # 18) are stated herein as "Defs. Memo. at __."

We note that counsel for Plaintiffs and Defendants submitted their Attorneys' Planning Meeting Report (Docket # 19) on February 19, 2008, and the parties are scheduled to appear at a Status and Scheduling Conference before Magistrate Judge Alba on March 6, 2008 (Docket # 15)

Activity Act ("UPUAA"), U.C.A. 1953 §§ 76-10-1601 to -1609; (c) fraud; (d) the Utah

Consumer Sales Practices Act ("UCSPA"), U.C.A. 1953 § 13-11-1 *et seq.* and similar consumer

protection statutes; and (d) unjust enrichment. ¶¶ 1, 45-112.

As alleged in the Complaint, Defendants have knowingly engaged in a deliberate

campaign of widespread fraud and deception intended to coax unsuspecting consumers into

purchasing millions of dollars worth of Akävar, a product touted as a "foolproof" alternative to

weight loss with "guaranteed success" and "WITHOUT GRUELING DIET AND EXERCISE

REGIMENS!" ¶¶ 1, 3 (emphasis in original). With regard to Akävar and numerous other alleged

dietary supplements, Plaintiffs allege that Defendants have perpetrated their schemes to defraud

through a web of interrelated, closely-held limited liability companies that oversee the

"research," publication, manufacturing, marketing, sales and distribution of Akävar. ¶ 2.

Defendants have operated a common business enterprise while engaging in the deceptive acts

and practices alleged and are, therefore, jointly and severally liable for such acts and practices.

*Id.*

Plaintiffs allege that Defendants have used television and Internet websites (interstate

wire facilities) and national print publications (U.S. mails) to advertise Akävar. ¶ 3.

Defendants' advertisements falsely state that "[s]tudies have proved a virtual 100% success rate

among the participants," and that by taking the product the consumer will see excess fat

"PULLED FROM BULGING PARTS OF YOUR BODY." ¶ 3 (emphasis in original).

Defendants also falsely claim, among other things, that the results achieved from using Akävar

are "scientific fact, documented by published medical findings," and that "a team of doctors

working in a recognized medical university discovered the potent caloric-restricting qualities" of

Akävar. *Id.*

In fact, as Plaintiffs allege, Defendants' advertising claims are false, misleading, deceptive and inaccurate. ¶ 23. Contrary to Defendants' advertising claims, no "tests prove virtually 100% success." ¶ 28. Nor is there any "clinical or scientific support for Defendants' representations that Akävar has the ability to cause pockets of fat to be pulled from bulging parts of consumers' bodies." ¶ 32. Likewise, Akävar has not undergone scientific evaluation by a "team of doctors," as Defendants claim, and it has not been tested in controlled random clinical trials. ¶ 27. These claims made by Defendants to Plaintiffs and the members of the Class nationwide are false and are intended to be, and are, misleading to consumers. ¶ 35.

## III.   STANDARD OF REVIEW

In reviewing a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded and factual allegations, draw all reasonable inferences in Plaintiffs' favor, and construe the Complaint liberally. *See Erickson v. Pardus,* __ U.S.__ , 127 S. Ct. 2197, 2200 (2007); *see also Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."); *Hansen v. Native Am. Ref. Co.,* 2007 WL 1108776, *3 (D. Utah Apr. 10, 2007) (same). In the context of Defendants' instant motion, this Court looks for "plausibility" in the claims asserted in Plaintiffs' Complaint. *Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly,* __ U.S. __, 127 S. Ct. 1955, 1970 (2007)).[2]  "[F]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir. 2007) (*quoting Twombly,* 127 S. Ct. at 1965).

---

[2]      In *Alvarado,* the Tenth Circuit read the Supreme Court's recent decisions in *Twombly,* 127 S. Ct. at 1970, and *Erickson,* 127 S. Ct. at 2200, as suggesting "that courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado,* 493 F.3d at 1215.

In this case, construing the allegations of the Complaint in the light most favorable to Plaintiffs, this Court should find that the allegations more than satisfy Rule 9(b) pleading requirements, asserts plausible federal and state law claims against Defendants, and sufficiently allege fraudulent statements attributable to each Defendant.

## IV.   ARGUMENT

### A.   Plaintiffs' Complaint More Than Satisfies The Pleading Requirements Of Rule 9(b)

The crux of Defendants' argument in seeking dismissal of the Complaint is the assertion that Plaintiffs have failed to plead fraud-based acts with the particularity required by Rule 9(b). Defs. Memo. at 4-5.  However, Defendants fail to cite any case law support their argument that, as pled, the Complaint does not fully comply with Rule 9(b)'s requirements. *Id.*  Instead, Defendants baldly assert that Plaintiffs' pleading is fatally flawed. *Id.*[3]  Defendants' unsupported assertions do not warrant dismissal of the Complaint.

It is well established within this Circuit that "[t]he requirements of Rule 9(b) must be read in conjunction with the principles of Rule 8, which calls for pleadings to be 'simple, concise, and direct, ... and to be construed as to do substantial justice.'" *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1252 (10th Cir. 1997) (quoting Fed. R. Civ. P. 8(e) & (f)); *Seattle-First Nat'l Bank v. Carlstedt,* 800 F.2d 1008, 1011 (10th Cir. 1986) (it is important that Rule 9(b) be read in conjunction with pleading requirements of Rule 8).  "Rule 9(b)'s purpose is to afford defendant[s] fair notice of [P]laintiff[s'] claims and the factual ground upon which

---

[3]      For example, Defendants' references to Plaintiffs' Sixth Cause of Action (Violations of UCSPA and Other Consumer Protection Statutes) and Seventh Cause of Action (Unjust Enrichment) are limited to brief assertions that each must meet Rule 9(b) heightened pleading standards because they too are supposedly based on fraud. Defs. Memo. at 3-4. As a result of Defendants' poorly drafted motion, it must be assumed that Plaintiffs' ability to satisfy Rule 9(b)'s pleading standards for *any* cause of action will satisfy the Rule 9(b) standards for *all* of the causes of action.

[they] are based...." *Koch v. Koch Indus., Inc.,* 203 F.3d 1202, 1236 (10th Cir. 2000) (internal

quotations and citation omitted); *see also Schwartz,* 124 F.3d at 1252 (same). Rule 9(b) requires

that Plaintiffs' CAC alleging fraud must "set forth the time, place and contents of the false

representation, the identity of the party making the false statements and the consequences

thereof." *Koch,* 203 F.3d at 1236 (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds),*

924 F.2d 176, 180 (10th Cir. 1991)); *see also Tal v. Hogan,* 453 F.3d 1244, 1263 (10th Cir.

2006), *cert. denied,* ___ U.S. ___, 127 S. Ct. 1334 (2007).[4] Significantly, "Rule 9(b) does ***not***

require particularity to the degree so as to supplant general discovery methods." *Manhattan*

*Const. Co. v. Degussa Corp.,* 2007 WL 983084, *1 (W.D. Okla. Mar. 29, 2007) (emphasis

added) (quoting *Graphic Techs., Inc. v. Pitney Bowes, Inc.,* 998 F. Supp. 1174, 1178 (D. Kan.

1998)). To the contrary, in *Schwartz,* 124 F.3d at 1252, the Tenth Circuit held that a pleading

satisfied Rule 9(b) requirements where the complaint merely "describe[d] the statements with

particularity and even quote[d] them in most instances ... identifie[d] documents, press releases,

and other communications which contain the statements ... [and] specifically allege[d] the facts

which the statements misrepresented or failed to disclose." *Id.* As set forth herein, the above-

referenced allegations of the Complaint more than satisfy this standard.

Any reasoned comparison of the Tenth Circuit's above-referenced analysis of Rule 9(b)

with the allegations contained within the Complaint serves to demonstrate that Plaintiffs have

fully satisfied the pleading requirements of Rule 9(b) by affording Defendants fair notice of

---

[4]     The Tenth Circuit has stated that "Rule 9(b) requires only the identification of the
circumstances constituting fraud, and that it does not require any particularity in connection with
an averment of intent, knowledge or condition of mind." *Schwartz,* 124 F.3d at 1252 (citation
omitted); *see also Converdyn v. Blue,* 2008 WL 167297, *1 (D. Colo. Jan. 11, 2008) (same; civil
RICO action).

Plaintiffs' claims and the actual ground upon which they are based, as mandated by the Tenth Circuit in *Schwartz*.[5]

Contrary to Defendants' contention, the Complaint alleges "facts surrounding the purported fraud." Defs. Memo. at 4. For example, the Complaint contains detailed allegations concerning a February 7, 2007 article, published in *Business Week*, in which Defendant Mowrey, speaking on behalf of Defendant Dynakor, erroneously represented himself as an independent reviewer who was not involved in the development of Akävar. ¶ 29 The Complaint also quotes Defendant Mowrey as falsely stating: "The real question is whether or not the diet pill can really let you eat all you want and still lose weight? In regards to Akävar 20/50, the facts are the facts." ¶ 29.[6] Further, to the extent that is possible without benefit of discovery, the Complaint identifies the documents, press releases and other communications disseminated by Defendants containing the false and misleading statements concerning the dietary supplement at issue. *See* ¶ 29 ("In an article for the February 7, 2007 *Business Wire*..."); ¶5 (referring to Plaintiff Miller's reliance upon advertisements disseminated via Defendants' Internet website – www.akavar.net –

---

[5]     We note that Defendants fail to cite, much less distinguish, the Tenth Circuit's controlling decision in *Schwartz*. *See* Defs. Memo. at 1-5.

[6]     The Complaint is replete with other specific allegations describing Defendants' false and misleading statements: "Defendants have used television, internet and national publications to advertise Akävar as a product that offers a 'foolproof' alternative to weight loss with 'guaranteed success' and 'WITHOUT GRUELING DIET AND EXERCISE REGIMENS!'... 'Studies have proved a virtual 100% success rate among the participants,' ... consumer will see excess fat 'PULLED FROM BULGING PARTS OF YOUR BODY.'" ¶ 3; "Defendants claim that Akävar is the 'European weight-loss breakthrough.'" ¶ 19; "The core of Defendants' fraudulent representations regarding Akävar is summarized in Defendant's slogan: 'Eat all you want and still lose weight.'" ¶ 21; and "This amazing formulation is the result of years of intensive research and scientific evaluation. Not one, but a team of doctors working in a recognized medical university discovered the potent caloric-restricting qualities... Tests prove virtually 100% success... Akävar -20/50 caused easy, automatic weight loss without calorie counting and without diet rebound... An entirely new generation of powerful, foolproof, bio-active weight-loss compounds that automatically reduce caloric intake... The only thing you have to do is remember to take your easy-to-swallow Akävar -20/50 tablets each and every day. That's it!"

using interstate wire facilities); ¶ 6 (detailing Plaintiff Howard's reliance upon representations made as part of Defendants' in-store advertising materials at Wal-Mart); ¶ 7 (noting Plaintiff Patterson's reliance on advertising posted at General Nutrition Center store). Thus, Defendants' assertion that Plaintiffs fail to allege whether they "saw such advertisement[s]," Defs. Memo. at 4, simply ignores the Complaint's allegations. Finally, the Complaint specifically alleges the "facts" that the referenced false and misleading statements misrepresented or failed to disclose.[7] Based upon the aforementioned allegations, Plaintiffs have afforded Defendants fair notice of their claims, the actual grounds upon which they are based, and have easily satisfied Rule 9(b)'s pleading requirements.

**B.   Plaintiffs Have Stated Claims For Civil Racketeering Under RICO And UPUAA With Sufficient Particularity**

Plaintiffs' First and Second Causes of Action assert claims against each of the Defendants for violations of § 1962(c) of RICO.[8] CAC ¶¶ 45-64. Each element of Plaintiffs' §1962(c) claim against Defendants is well-pled and not subject to dismissal. This nationwide

---

[7]     *See* ¶ 19 ("In advertising, Defendants claim that Akävar is the 'European weight-loss breakthrough.' In fact, Akävar was not available in Europe prior to its U.S. introduction, and was created by Defendants in Utah, at their headquarters."); ¶ 27 ("Akävar has not undergone scientific evaluation by a team of doctors, nor has Akävar been tested in controlled random clinical trials); ¶ 28 ("[N]o 'tests prove virtually 100% success.'"); ¶ 31 ("Nor is Defendant Mowrey even remotely 'independent.'"); ¶ 3 ("Akävar is not a foolproof alternative to weight loss with guaranteed success and the product has not been subjected to clinical trials."); ¶ 32 ("there is no clinical or scientific support for Defendants' representations that Akävar has the ability to cause pockets of fat to be pulled from bulging parts of consumers' bodies, working automatically if the consumer simply remembers to take an easy-to-swallow tablet. To the contrary, there is no guarantee that the product can and does work at all").

[8]     Plaintiffs' Third and Fourth Causes of Action assert claims against each of the Defendants for violations of § 76-10-1603(3) and (4) of UPUAA, Utah's "racketeering" statute. CAC ¶¶ 65-84. For purposes of this Opposition, Plaintiffs' arguments regarding the sufficiency of their civil RICO claims equally apply to their UPUAA claims, and Defendants do not distinguish between federal and state law civil racketeering claims in their moving papers. *See Albright v. Attorney's Title Ins. Fund*, 504 F. Supp. 2d 1187, 1203 n.15 (D. Utah 2007) ("The UPUAA was modeled after the federal RICO statute.") (citation omitted).

class action fulfills RICO's express purpose, which is "not merely to compensate victims but to turn them into prosecutors, 'private attorneys general,' dedicated to eliminating racketeering activity." *Rotella v. Wood,* 528 U.S. 549, 557 (2000). RICO's "'remedial purposes' are nowhere more evident than in the provision of a private action for those injured by racketeering activity." *Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 498 (1985). The aim of the statute, and criminal prosecutions and civil actions brought thereunder, "is to divest the association [-in-fact enterprise]" – the web of interlocking entities of which each Defendant was an active participant – "of its ill-gotten gains." *United States v. Turkette,* 452 U.S. 576, 585 (1981).

Under § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). To survive a motion to dismiss, a cause of action asserting civil RICO claims must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Dobson v. Anderson,* 2008 WL 183080, *2 (E.D. Okla. Jan. 17, 2008) (citation omitted); *Internet Archive v. Shell,* 505 F. Supp. 2d 755, 767 (D. Colo. 2007) (same); *Albright,* 504 F. Supp. 2d at 1204 (same). "RICO defines 'racketeering activity' as any act that violates specified state and federal crimes, including mail fraud, wire fraud, and bank fraud." *BancOklahoma Mortg. Corp. v. Capital Title Co.,* 194 F.3d 1089, 1102 (10th Cir. 1999). The underlying acts are "referred to as predicate acts because they form the basis for liability under RICO." Rule 9(b) requires predicate acts based on fraud to be pled with specificity to provide clear factual notice of the factual basis for the predicate acts. *Andrews v. Heaton,* 483 F.3d 1070, 1076 (10th Cir. 2007); *see also Hansen,* 2007 WL 1108776, *3. Defendants erroneously argue that ***each*** element of a civil RICO claim must be pled with Rule 9(b)

particularity. Defs. Memo. at 2. Although Plaintiffs concede that RICO predicate acts grounded
in fraud must be pled with particularity, the same is not true for the other elements of a civil
RICO claim. This rule is clearly established in this Circuit. For example, in *Cayman Explor.
Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357 (10th Cir. 1989), a case relied upon by
Defendants, the court stated that "[e]very circuit which has examined this issue has found that
***Rule 9(b) is applicable to RICO predicate acts based on fraud.***" *Id.* at 1362 (emphasis added).
Tellingly, the *Cayman Explor.* Court differentiated between predicate act pleading requirements
and the pleading requirements for ***other*** elements of a civil RICO claim when it held that "the
complaint did not (1) allege the predicate racketeering activity, mail fraud, with particularity
under Rule 9(b), … or (2) allege sufficient facts of a pattern of racketeering activity." *Id.*[9]

Contrary to Defendants' suggestion (Defs. Memo. at 5), Plaintiffs' RICO and UPUUA
claims satisfy the applicable pleading burdens by alleging the following elements:

(a) Defendants are each a liable "person," within the meaning of §§ 1961(3) and 1962(c)
of RICO, CAC ¶¶ 46, 56, 66, 76;

(b) Defendants each committed at least two predicate acts of "racketeering activity," ¶¶
1-3, 14-35, 48, 58, 68, 78 (detailing Defendants' knowing and willful participation in the scheme
to defraud Plaintiffs and Class members);

(c) predicate acts of "racketeering activity" committed by the Defendants constituted a
"pattern of racketeering activity," ¶¶ 2-3, 60-62, 70-72, 80-82;

(d) each Defendant directly or indirectly participated in the conduct of an "enterprise," ¶¶
51, 61, 71, 81; *and*

---

[9]      We note that Defendants did not ask this Court to require Plaintiffs to file a RICO Case
Statement further detailing the elements of the civil RICO claims. *See Burbank v. U.S. District
Court,* 2008 WL 170691, *3-5 (D. Utah Jan. 16, 2008).

(e) the activities of the "enterprise" affected interstate *or* foreign commerce. ¶¶ 49, 59, 69, 79.

Because Plaintiffs "spell out ... the nature of the enterprise alleged, the specific predicate acts that constitute the pattern of racketeering, and the persons who are alleged to have committed each of those predicate acts," Defendants' motion to dismiss should be denied. *Zito v. Leasecomm Corp.,* No. 02 Civ. 8074 (GEL), 2004 WL 2211650, at *7 (S.D.N.Y. Sept. 30, 2004) ("*Zito II*") (citation omitted).

### C.   Plaintiffs Have Alleged The RICO Predicate Acts And Defendants' Participation In The Scheme To Defraud Plaintiffs And Class Members With Particularity

Finally, Defendants assert that Plaintiffs "improperly aggregate[s]" them in the Complaint and fail to "specify[] what each [D]efendant is alleged to have done to participate in and further the alleged fraud." Defs. Memo. at 5.  This argument ignores Paragraphs 8-13 of the Complaint, which specify each Defendant's position in the subject corporate entities and the role each one played in the scheme to defraud Plaintiffs and Class members.[10]  This argument also ignores the Tenth Circuit's decision in *Schwartz,* which made clear that Rule 9(b) "does ***not*** require that a complaint set forth detailed evidentiary matter as to why particular defendants are

---

[10]    Defendants' suggestion that the Complaint does not supply them with enough information so that they can understand what they are being charged with in this case is belied by reference to recent enforcement proceedings brought by the Federal Trade Commission against these Defendants.  Paragraph 8 of the Complaint alleges that "Defendant Basic Research is the subject of a permanent injunction by the [FTC] for the marketing and sale of alleged weight loss products that purport to work without diet or exercise." Attached hereto as ***Exhibit A*** is a photocopy of the FTC's Decision and Order, issued on June 19, 2006, in *In the Matter of Basic Research, L.L.C.,* Docket No. 9318.  That enforcement proceeding, and the resulting FTC consent decree, arose out of Defendants' previous activities in marketing and selling weight loss dietary supplements that were similar to Akavar.  In this case, Plaintiffs expect to prove that Defendants' marketing and sales activities with regard to Akavar directly violated Parts I, II, III and IV of the FTC consent decree.

responsible for particular statements, or that the allegations be factually or legally valid."

*Schwartz,* 124 F.3d at 1253 (emphasis added).[11]

In *Schwartz,* a securities fraud class action, plaintiffs alleged that the defendant corporate

officers and directors were "responsible for all of [the company's] alleged fraudulent

statements." *Id.* Rejecting defendants' argument that "the Complaint's failure to match specific

[company] statements with specific [company] insiders violates Rule 9(b)," *id.* at 1254, the

Tenth Circuit stated in relevant part:

> To the contrary, ***the identification of corporate insider defendants without
> matching specific misstatements with specific officers or directors does not
> violate Rule 9(b)***. *See Levit v. Aweida (In re Storage Technology Corp. Securities
> Litigation*), 630 F.Supp. 1072, 1076-77 (D. Colo. 1986). ***Identifying the
> individual sources of statements is unnecessary when the fraud allegations
> arise from misstatements or omissions in group-published documents such as
> annual reports, which presumably involve collective actions of corporate
> directors or officers***. *See id.; Samuel v. Pace Membership, Inc.,* 686 F.Supp. 873,
> 874 (D.Colo.1988); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1440 (9th
> Cir.1987) (prospectuses, registration statements, annual reports, press releases, or
> other "group published information" are presumed collective actions).

*Schwartz,* 124 F.3d at 1254 (emphasis added; footnote omitted).

The "group publication" doctrine followed in the Tenth Circuit "allows plaintiffs to rely

on a presumption that statements in prospectuses, registration statements, annual reports, press

releases, or other ***group-published information***, are the collective work of those individuals with

***direct involvement in the everyday business of the company***." *Elliott Assocs., L.P. v. Hayes,*

141 F. Supp. 2d 344, 354 (S.D.N.Y. 2000) (first emphasis in original) (quoting *In re Oxford

Health Plans, Inc.*, 187 F.R.D. 133, 142 (S.D.N.Y. 1999)); *see also In re Livent, Inc. Secs. Litig.,*

---

[11]      As the Tenth Circuit explained, "Rule 9(b) requires that the pleadings give notice to the
defendants of the fraudulent statements for which they are alleged to be responsible." 124 F.3d
at 1253 (citing *Goldman v. Belden,* 754 F.2d 1059, 1069-70 (2d Cir. 1985) ("[T]he Complaint
adequately ... identified the defendants charged with having made [the allegedly fraudulent]
statements.... There can be no doubt that the Complaint gives each defendant notice of what he is
charged with. *No more is required by Rule 9(b).*") (emphasis added)).

78 F. Supp. 2d 194, 219 (S.D.N.Y. 1999) (group pleading doctrine permits plaintiffs "to allege that misstatements contained in company documents may be presumed to be the work of the company's officers and directors").[12]

The doctrine is equally applicable in this case because the Complaint alleges that Defendants Basic Research, Dynakor, Western Holdings, Gay, Mowrey and Friedlander are corporate insiders and that each one had involvement in the everyday business of Dynakor, the affiliate of Basic Research that markets and sells Akavar.[13] *See* ¶ 16 ("Defendant Dynakor was created by Defendants with the intent to mislead consumers into believing their was a real independent 'lab' behind Akavar-20/50. This fiction was openly acknowledged in internal meetings by Basic Research, and its management, including Gay, Mowrey and Friedlander."); ¶ 9 (alleging that Dynakor markets and sells Akavar as an affiliate of Basic Research); ¶ 11 (identifying Gay as a corporate insider: "Defendant Gay is an officer and a principal shareholder of, among other companies, Defendants Basic Research and Dynakor. Individually, or acting in concert with others, Defendant Gay formulates, directs, controls, or participates in the acts and/or

---

[12]    Adhering to *Schwartz,* district courts within this Circuit have also endorsed the "group publication" doctrine. *See, e.g., Catalan v. Vermillion Ranch Ltd. Partnership,* 2007 WL 38135, *7 (D. Colo. Jan. 4, 2007) (holding Rule 9(b) pleading requirements satisfied in civil RICO action where, although only one defendant signed documents, all defendants were partners in organization and, thus, presumed to be part of collective action); *see also In re Qwest Comm. Int'l, Inc. Secs. Litig.,* 387 F. Supp. 2d 1130, 1144-1145 (D. Colo. 2005) (securities fraud class action applying "group publication" doctrine where false statements alleged in the complaint were made in, among other things, statements to press, and subject to a presumption of collective action by corporate directors and officers).

[13]    Numerous courts in other circuits have recognized that the "group publication" doctrine is applicable in civil RICO actions. *See, e.g., Liberty Mut. Ins. Co. v. Blessinger,* 2007 WL 951905, *2 (E.D.N.Y. Mar. 27, 2007) (rejecting defendants' contention that "the group pleading doctrine applies only in securities fraud cases. This is simply untrue.") (citing *United States Fire Ins. Co. v. United Limousine Svc., Inc.,* 303 F. Supp. 2d 432 (S.D.N.Y. 2004) (invoking group pleading doctrine in civil RICO matter where defendants were sued for automobile insurance fraud)).

practices of Defendants, including Basic Research and Dynakor."); ¶ 12 (identifying Defendant

Mowrey as a corporate insider: "Defendant Mowrey is a principal shareholder or, and the

Director of Scientific Affairs at, Defendant Basic Research."); and ¶ 13 (establishing Defendant

Friedlander's direct involvement in the everyday business of the company: "Defendant

Friedlander, the self-proclaimed marketing guru of Basic Research... is a marketing consultant

to, among others, Defendants Gay, Basic Research and Dynakor... Defendant Friedlander

maintains his offices at the headquarters of Defendant Basic Research.").

　　　　In addition to the Defendants' alleged direct involvement with the everyday business of

selling Akavar, the CAC alleges that specific material misstatements are attributed directly to

Defendants Mowrey and Dynakor. *See* ¶ 29 (alleging material  misstatements made expressly by

Defendant Mowrey regarding Akavar).

　　　　Defendants' argument that the Complaint is subject to dismissal because it purportedly

fails to "identify ... any single mailing, wire transaction, or transport of money," Defs. Memo. at

5, ignores the Complaint's allegations. *See* ¶¶ 1, 3, 5-7, 19-22, 24-30, 33-35.  To the extent that

further detail as to the specific dates when Defendants used the U.S. mails and interstate wire

facilities to carry out their scheme to defraud Plaintiffs and Class members, such information can

be collected in discovery.[14]  As the First Circuit explained in holding that a district court abused

its discretion in dismissing plaintiff's civil RICO claim without permitting discovery to occur:

> [I]n a RICO mail and wire fraud case, in regards to the details of just when and
> where the mail or wires were used, we hold that dismissal should not be

---

[14]　　　　To the extent that Defendants' brief may be read as suggesting that they did not use the
U.S. mails and/or interstate wire facilities to advertise and market Akavar, we respectfully direct
their attention (and this Court's attention) to the following response by Judge Stearns to a similar
Rule 9(b) argument offered by a defendant pharmaceutical manufacturer in a civil RICO class
action: "[I]t is possible that [defendants were] prescient enough to rely solely on bicycle
messengers (or verbal communications suggest) to communicate with the publishers, but I doubt
it." *In re Lupron Mktg. & Sales Pracs. Litig.,* 295 F. Supp. 2d 148, 171 (D. Mass. 2003).

*automatic* once the lower court determines that Rule 9(b) was not satisfied. In an appropriate case, where, for example the specific allegations of the plaintiff make it likely that the defendant used interstate mail or telecommunications facilities, and the specific information as to use is likely in the exclusive control of the defendant, the court should make a *second* determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint.

We advocate this procedure because of the apparent difficulties in specifically pleading mail and wire fraud as predicate acts. In the instant case, it is seemingly impossible for the plaintiff to have known exactly when the various defendants phoned or wrote to each other or exactly what was said. The plaintiff clearly set out a general scheme, which very plausibly was meant to defraud the plaintiff, and also probably involved interstate commerce ... In this day and age, it is difficult to perceive how the defendants would have communicated without the use of the mail or interstate wires....

Where there are multiple defendants, as here, and where the plaintiff was not directly involved in the alleged transaction, *the burden on the plaintiff to know exactly when the defendants called each other or corresponded with each other, and the contents thereof, is not realistic. Plaintiff here provided an outline of the general scheme to defraud and established an inference that the mail or wires was used to transact this scheme; requiring plaintiff to plead the time, place and contents of communications between the defendants, without allowing some discovery, in addition to interrogatories, seems unreasonable.*

*New England Data Svcs., Inc. v. Becher,* 829 F.2d 286, 290-91 (1st Cir. 1987) (latter emphasis added; footnote and citations omitted) (cited with approval by Tenth Circuit in *Cayman Explor.,* 873 F.2d at 1362).

In this case, Plaintiffs have served written discovery requests on Defendants, whose responses are due on March 10, 2008. To the extent that further detail concerning Defendants' use of the U.S. mails and interstate wire facilities to market and sell Akavar is necessary, Plaintiffs expect truthful responses to those discovery requests to provide such evidence.

## V.   **CONCLUSION**

For all of the reasons stated above, Plaintiffs respectfully request that this Court enter an Order denying Defendants' Motion to Dismiss the Complaint.

Dated:  February 19, 2008

Jan Graham (01231)
**GRAHAM LAW OFFICES**
150 South 600 East, Suite 5B
Ambassador Plaza
Salt Lake City, UT  84102
Telephone:  (801) 596-9199
Facsimile:  (801) 596-9299
jan@grahamlawoffices.com

Scott R. Shepherd
James C. Shah
Nathan C. Zipperian
**SHEPHERD, FINKELMAN, MILLER& SHAH LLC**
35 E. State Street
Media, PA 19063
Telephone:  (610) 891-9880
Facsimile:  (610) 891-9883
sshepherd@sfmslaw.com
jshah@sfmslaw.com
nzipperian@sfmslaw.com

**WILENTZ, GOLDMAN & SPITZER, P.A.**


By:  _____
       Kevin P. Roddy
Lynne M. Kizis
Daniel R. Lapinski
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, NJ  07095
Telephone: (732) 636-8000
Facsimile:  (732) 855-6117
kroddy@wilentz.com
lkizis@wilentz.com
dlapinski@wilentz.com

**Attorneys for Plaintiffs**