Jan Graham (01231)
Graham Law Offices
150 South 600 East, Suite 5B
Ambassador Plaza
Salt Lake City, UT  84102
Telephone:  (801) 596-9199
Facsimile:  (801) 596-9299
jan@grahamlawoffices.com

**Attorneys for Plaintiffs**
[Additional Counsel Listed On Signature Page]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PAMELA MILLER, RANDY HOWARD, and DONNA PATTERSON,  on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BASIC RESEARCH LLC, DYNAKOR PHARMACAL, LLC, WESTERN HOLDINGS, LLC,  BY DEX MANAGEMENT, L.L.C., DENNIS GAY, DANIEL B. MOWREY, Ph.D., MITCHELL K. FRIEDLANDER, and DOES 1 through 50,<br><br>Defendants. | **Civil No. 2:07-cv-00871-TS**<br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, Pamela Miller, Randy Howard and Donna Patterson, by counsel and for

their First Amended Class Action Complaint (hereinafter the "FAC"), assert federal and state

law class action claims against Defendants, Basic Research, L.L.C. ("Basic Research"),

Dynakor Pharmacal, L.L.C. ("Dynakor"), Western Holdings, L.L.C. ("Western Holdings"),

1

Bydex Management, L.L.C. ("Bydex"), Dennis Gay ("Gay"), Daniel B. Mowrey ("Mowrey"),

Mitchell K. Friedlander ("Friedlander"), and Does 1-50 (collectively, the "Defendants").

Plaintiffs hereby allege, with personal knowledge as to their own actions, and upon

information and belief as to those of others, as follows:

## NATURE OF THE CLASS ACTION

1.    This nationwide class action seeks to redress the pervasive pattern of fraudulent,

deceptive and otherwise improper advertising, sales and marketing practices that Defendants

have engaged in, and are currently engaged in, with respect to  weight-loss dietary

supplement products; specifically,  "Akävar 20/50" ("Akävar").  During the Class Period (as

defined in ¶ 87 of this FAC), Defendants Gay, Mowrey and Friedlander have knowingly

engaged in a deliberate pattern of wrongful, illegal and fraudulent practices in conducting the

affairs of Defendants Basic Research, Dynakor, Western Holdings, Bydex and affiliated

entities, and have used those entities as tools or instrumentalities to carry out schemes or

artifices to defraud.  Defendants' schemes or artifices to defraud Plaintiffs and Class

members have consisted of  systematic and continuing practices of disseminating throughout

the United States false and misleading information via television commercials, Internet

websites and postings, point-of-purchase advertisements, national magazine advertisements

and the product packaging, intended to coax unsuspecting consumers, including Plaintiffs

and the members of the Class, into purchasing millions of dollars worth of Akävar, which is

manufactured, marketed, advertised and sold by Defendants.

2.    Plaintiffs, on behalf of themselves and the members of the Class (as defined in ¶

87 of this FAC), assert claims against Defendants for violations of (a) the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968; (b) Utah's

Pattern of Unlawful Activity Act ("UPUAA"), Utah Code Ann. §§ 76-10-1601 to -1609; (c)

fraud and deceit; (d) violations of the Utah Consumer Sales Practices Act ("UCSPA"), Utah

Code § 13-11-1 *et seq.*; (e) similar state consumer protection statutes; and (f) and unjust

enrichment.

3.     With regard to Akävar and numerous other dietary supplements, during the Class

Period and for a number of years Defendants have perpetrated identical or similar schemes

to defraud consumers through a web of interrelated, closely-held limited liability companies

that oversee the "research," publication, manufacturing, marketing, sales and distribution of

such products in a willful effort to deceive the public as to the true identity and nature of

those involved in the illegal business enterprise(s).  At all relevant times, Defendants have

operated common business enterprise(s) while engaging in the deceptive acts and practices

alleged in this FAC and therefore, may be held jointly and severally liable for such acts and

practices.

4.     Although Defendants' common business enterprise creates new companies for

the manufacture, advertisement, distribution and sale of most, if not all, of its dietary

supplement products, Defendants Gay, Mowrey and Friedlander  control all of the entities

within the web of interrelated companies, and each company or entity is engaged in

transacting the same or similar business.

5.     Each of the companies described in ¶¶ 1, 3 and 4 of this FAC pulls from a pool

of employees that are used interchangeably between the companies or entities.  Similarly,

each of these companies utilizes centralized accounting, payroll and record-keeping

functions.  This results in funds routinely being transferred or commingled between the various companies or entities controlled by Defendants Gay, Mowrey and Friedlander.

6.   The interrelationship of the Defendants and the entities described in ¶ 1, 3, 4 and 5 of this FAC is also evidenced by the fact that almost all of them occupy the same office address at 5742 West Harold Gatty Drive, Salt Lake City, Utah 84116.

7.   As part of their pervasive pattern of wrongful conduct, during the Class Period Defendants have utilized (and continue to utilize) the U.S. mail and interstate wire facilities, including television, Internet, point-of-purchase advertisements and advertisements published in national print publications (such as *Parade* magazine) to advertise, label, offer for sale, sell and distribute Akävar  by falsely claiming that Akävar is a "New! European Weight-Loss Breakthrough" product that offers a "foolproof" alternative to weight loss with "guaranteed success" and "WITHOUT GRUELING DIET AND EXERCISE REGIMENS!"  (Emphasis in original.)  Defendants' advertisements for Akävar also falsely and misleadingly state that "Studies have proved a virtual 100% success rate among the participants," and that by taking the product the consumer will see excess fat "PULLED FROM BULGING PARTS OF YOUR BODY."  In such advertisements, Defendants also falsely assert that such so-called "results" are "scientific fact, documented by published medical findings," and that "a team of doctors working in a recognized medical university discovered the potent caloric-restricting qualities" of Akävar.  In truth and in fact, Defendants know that Akävar is ***not*** a foolproof alternative to weight loss with guaranteed success and Defendants know that the product has ***not*** been subjected to clinical trials.

8.    As part of their pervasive pattern of wrongful conduct, during the Class Period

Defendants have utilized (and continue to utilize) the U.S. mail and interstate wire facilities,

including  telephones, facsimile machines and Internet to receive consumer solicitations to

purchase Defendants' products, and Defendants' business activities have affected interstate

commerce.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this nationwide class action

pursuant to 28 U.S.C. § 1331, relating to federal question jurisdiction; Section 1964(c) of

RICO, 18 U.S.C. § 1964(c); and Rule 23 of the Federal Rules of Civil Procedure.  Venue is

properly laid in this District pursuant to 28 U.S.C. § 1391 and Section 1965 of RICO, 18

U.S.C. § 1965.

## PARTIES

**Plaintiffs**

10.   Plaintiff, Pamela Miller, is a resident of Gilbert, Arizona.  During the Summer of

2007, while conducting an Internet search on nutrition, Ms. Miller observed an

advertisement for Akävar which, upon information and belief, was designed, sponsored and

maintained by Defendants.  This Internet advertisement, adorned with a picture of the

product box and prominent yellow and orange colors, represented that Akävar was

scientifically proven that it was a "EUROPEAN WEIGHT LOSS BREAKTHROUGH,"

and professed in bold print that the user could "**EAT ALL YOU WANT & STILL LOSE**

**WEIGHT…**"  Based upon this advertising disseminated by Defendants, Ms. Miller

purchased a supply of Akävar through Defendants' Internet website, www.Akävar.net.  After

25 days of taking Akävar as directed on the package labeling, Ms. Miller gained 10 pounds, and she ceased taking the product.  Thereafter, Ms. Miller sent several e-mail inquiries concerning Akävar to Defendant Dynakor and she also made several interstate telephone calls, leaving messages on telephone answering machines maintained by Defendants, but she received no response to her e-mail or voicemail messages.

11.   Plaintiff, Randy Howard, is a resident of Morton, Illinois.  In or around October 2007, Mr. Howard observed an Akävar cardboard point-of-purchase advertising display while shopping at a Wal-Mart store located in Morton, Illinois.  Upon information and belief, the point-of-purchase display that Mr. Howard saw was designed and produced by Defendants and supplied by Defendants to the Wal-Mart store.  This display, which stood about five feet tall and was approximately 30 inches wide, with a light-colored background and the figure of a person on it, was positioned in the middle of an aisle.  The advertising display represented that users of Akävar could "**Eat All You Want and Still Lose Weight…**," and stressed that users could lose weight without changing eating habits.  The advertising display also represented that the product was something new from Europe that would work.  (A copy of an advertisement similar to the advertisement observed by Mr. Howard is attached hereto as Exhibit A).  Based upon these representations made as part of Defendants' in-store advertising materials, Plaintiff Howard purchased two bottles of Akävar at the Wal-Mart store at a cost of approximately $40 per bottle. After two weeks of taking Akävar as directed on the package labeling, without changing his eating habits, Mr. Howard had gained five or six pounds and he ceased taking Akävar.

12.   Plaintiff, Donna Patterson, is a resident of Washington, DC.  In or around August 2007, Ms. Patterson observed an advertisement for Akävar published in a national women's magazine that she read while at a hair salon in Washington, DC.  The advertisement, which contained the image of a female model, touted Akävar as a new "**EUROPEAN WEIGHT LOSS BREAKTHROUGH**" that had fast-acting caloric restriction.  (A copy of an Akävar advertisement containing the image of a female model similar to that viewed by Ms. Patterson is attached hereto as Exhibit B).  The advertisement also stated that one could "**EAT ALL YOU WANT & STILL LOSE WEIGHT…**" Based upon this advertising by Defendants, Ms. Patterson purchased a supply of Akävar from a General Nutrition Center store located in Arlington, Virginia, for approximately $40.00.  After 30 days of taking Akävar as directed on the package labeling, Ms. Patterson had lost no weight, and she ceased taking the product.

**Defendant Basic Research**

13.   Defendant Basic Research is a limited liability company established under the laws of the State of Utah with its principal place of business located at 5742 West Harold Gatty Drive, Salt Lake City, Utah 84116.

14.   Basic Research claims that is one of the largest nutraceutical companies in the United States with annual sales revenues in excess of $50 million.  Basic Research develops, manufactures and markets scores of cosmetics, nutritional supplements and dietary supplements that are marketed under the names of nearly a dozen limited liability companies that have been formed by Defendants.  Upon information and belief, Basic Research conducts business under, or is directly affiliated with, each of these limited liability

companies and Basic Research does business under a variety of trade names, including Western Holdings, Dynakor, NutraSport, Silver Sage, Klein-Becker USA, Urban Biologies, Alpha Gen Biotech, Sovage Dermalogic and Body Innoventions, AG Waterhouse and BAN.

15.   Defendant Basic Research and Defendants Mowrey, Gay and Friedlander have a pattern and practice of creating a new limited liability company for each dietary supplement product it manufactures, advertises and sells to consumers.  Defendants Mowrey, Gay and Friedlander have a pattern and practice of using the "goodwill" of Basic Research to hold themselves, and their affiliated companies, out to the public as the "Basic Research Family of companies."  In so doing, Defendants and their related entities make the same or similar false and misleading claims about the same or similar dietary supplement, that is merely packaged under a different name and sold by a different entity.  In this case, Basic Research and the other Defendants created Dynakor for the sole purpose of serving as a conduit for the nationwide sale of Akävar to Plaintiffs and Class members.

16.   In 1993, Defendant Basic Research entered into a royalty agreement and/or covenant not to sue in order to resolve certain disputes with Defendant Friedlander.  Under the terms of that agreement, Basic Research pays Friedlander a "royalty" payment for each sale of various dietary supplements marketed by Basic Research.

17.   Defendant Basic Research is the subject of a permanent injunction entered by the U.S. Federal Trade Commission ("FTC") that, among other things, proscribes the marketing and sale of alleged weight loss products unless competent and reliable scientific evidence supports the claims made about such products.  *In the Matter of Basic Research, L.L.C., A.G. Waterhouse, L.L.C., Klein-Becker USA, L.L.C., Nutrasport, L.L.C., Sovage Dermalogic Laboratories,*

*L.L.C., BAN, L.L.C., d/b/a Basic Research, L.L.C., Old Basic Research, L.L.C., Basic Research, A.G. Waterhouse, Klein-Becker USA, Nutra Sport, and Sovage Dermalogic Laboratories, Dennis Gay, Daniel B. Mowrey, d/b/a American Phytotherapy Research Laboratory, and Mitchell K. Friedlander,* FTC Docket No. 9318 (June 19, 2006) (hereinafter the "FTC Injunction").  (A copy of the FTC Injunction is attached hereto as Exhibit C).  As alleged in this FAC, Defendant Basic Research's representations concerning Akävar  constitute violations of the FTC Injunction.

**Defendant Dynakor**

18.  Defendant Dynakor is a limited liability company established under the laws of the State of Utah with its principal place of business located at 5742 West Harold Gatty Drive, Salt Lake City, Utah 84116.

19.  As alleged in ¶ 15, Dynakor, an affiliate of Defendant Basic Research, was created for the sole purpose of advertising, marketing and selling certain products, including Akävar, developed by Defendants.

20.  Defendant Dynakor, under the explicit direction of Defendants Basic Research, Gay, Mowrey and Friedlander, markets, advertises and promotes Akävar as a new "European Weight Loss Breakthrough" that is scientifically proven to allow users to "**EAT ALL YOU WANT & STILL LOSE WEIGHT**" without changing eating habits due to Akävar's ability to cause "fast acting caloric restriction."

**Defendant Western Holdings**

21.   Defendant Western Holdings is a limited liability company established under the laws of the State of Utah with its principal place of business located at 1821 Logan Avenue, Cheyenne, Wyoming 82001.

22.   Defendant Western Holdings, an affiliate of Defendant Basic Research, is used by Basic Research and the other Defendants for the sole purpose of registering creative (or trade) names with the U.S. Patent and Trademark Office for licensing to Defendants in furtherance of their collective illegal activity.

23.   Western Holdings customarily licenses such trademarks or trade names to Defendant Basic Research for the development and manufacturing of cosmetics, nutritional supplements and dietary supplements.  The phrases or slogans "Dynakor Pharmacal," "Basic Research," "Eat All You Want & Still Lose Weight," "and we couldn't say it in print" and "and we couldn't say it in print if it wasn't true" are registered trademarks of Western Holdings.  Defendant Western Holdings has licensed these various registered trademarks to Defendants for use in Defendants' scheme or artifice to defraud Plaintiffs and Class members.

**Defendant Bydex**

24.   Bydex is a limited liability company established under the laws of the State of Utah with its principal place of business located at 5742 Harold Gatty Drive, Salt Lake City, Utah, 84116-3762.

25.   Defendant Bydex serves as the employer of the principals and other employees who operate Defendants Basic Research and Dynakor.  Bydex shares the same business

address as Defendants Basic Research and Dynakor, and it shares the same business address as Defendants Gay, Mowrey and Friedlander.

26.   Bydex is an employee management company whose employees provide services to Defendants Basic Research and Dynakor.  For example, Bydex "employs" Brad Stewart, who serves as Chief Financial Officer for both Basic Research and Dynakor.  In this capacity, Mr. Stewart oversees all financial aspects of the business conducted by Defendants Basic Research, Dynakor, and Defendants' other limited liability companies, including information relating to sales of Akävar products, Akävar product advertising and expenses, product inventories, data tracking and identification of retailers.

**Defendant Gay**

27.   Defendant Gay is a citizen and resident of the State of Utah with a residence located at 748 East 200 South, Payson, Utah 84651, and a place of business located at 5742 West Harold Gatty Drive, Salt Lake City, Utah 84116.

28.   Defendant Gay is an officer and a principal shareholder of, among other companies, Defendants Basic Research and Dynakor.  Individually or acting in concert with the other Defendants, Gay formulates, directs, controls, or participates in the acts and/or business practices alleged in this FAC.  As an officer of Basic Research and Dynakor, Gay has final decision-making authority over work carried out in Basic Research's "Marketing Department," which is responsible for the labeling, advertising and media placement for dietary supplements sold by Defendants.

29.   Defendant Gay, as an officer and principal shareholder of Defendants Basic Research and Dynakor, is personally responsible for the design, content, approval,

distribution and publication of all Akävar advertisements, including the specific

advertisements viewed and relied upon by Plaintiffs and Class members, as alleged in this

FAC.  Within the Defendants' business enterprise, Gay is the person ultimately responsible

for placing the advertisements for products, including Akävar, into the stream of commerce

and for selling the products in interstate commerce.  Gay makes the final decision on both

the  content of advertising and the final decision on product pricing.   Additionally, Gay has

deliberately confused consumers as to the source of various products, including Akävar, that

Defendants (including Gay) manufacture, market, advertise, promote, distribute, and sell.

His intentional tortious acts and personal participation in the wrongful conduct underlying

this class action deprive him of any protection he might otherwise have for his personal

liability under the corporate shield doctrine, or otherwise.

    30.  In connection with the manufacture, marketing, advertising, promotion,

distribution and sale of Akävar, Defendant Gay has exercised complete dominion and

control over Basic Research, Dynakor, Bydex and Western Holdings, such that these

companies are his alter ego, a sham, facade, and mere instrumentality for his personal benefit,

and he has disregarded and abused the corporate form and structure of these companies.

    31.  Defendant Gay has misused the corporate form of Basic Research, Dynakor,

Bydex and Western Holdings to commit an intentional fraud upon the public, in an effort to

defeat the ends of justice and otherwise evade the law, including with respect to the

manufacture, marketing, advertisement, promotion, distribution and sale of Akävar.

    32.  In addition, Defendant Gay has fraudulently created trademarks and the above-

mentioned multiple corporations in order to evade detection of his true identity as the

individual with dominion and control, also in order to defeat the ends of justice and otherwise evade the law, including with respect to the marketing, advertisement, promotion, distribution, and sale of Akävar.

33.   Defendant Gay is the subject of the FTC Injunction described in ¶ 17 of this FAC.  Defendant Gay's activities with regard to the marketing, advertising and sales of Akävar constitute a violation of the FTC Injunction, and such violation is evidence of Defendants' scheme or artifice to defraud Plaintiffs and Class members.

**Defendant Mowrey**

34.   Defendant Mowrey is a citizen and resident of the State of Utah with a place of business located at 5742 West Harold Gatty Drive, Salt Lake City, Utah 84116.

35.   Defendant Mowrey is a principal shareholder of and maintains the title of "Director of Scientific Affairs" at Defendant Basic Research.  Mowrey also serves as a "consultant" to Defendant Dynakor.

36.   As alleged in ¶ 17 (describing the FTC Injunction), at all relevant times Defendant Mowrey also did business as "American Phytotherapy Research Laboratory,"  a business organization of which he is the sole employee and which is used as an instrumentality to develop, market, endorse and promote products – including Akävar – for Defendants Basic Research and Dynakor.  In 2002, the name of American Phytotherapy Research Laboratory was changed to "DBM Enterprisers."  Through DBM Enterprises, Mowrey performs work solely for Defendants Gay, Friedlander, Basic Research and their affiliated entities.

37.   Defendant Mowrey is responsible for developing the products illegally marketed, advertised and sold by Defendants, including Akävar.  Within Defendants' business enterprise, Mowrey researchers and develops products ideas, concepts and formulations, performs "substantiation research," and reviews advertisements for substantiation.

38.   In various nationwide advertisements for dietary supplements marketed and sold by Defendant Basic Research, Defendants have often represented, expressly or by implication, that Defendant Mowrey is a medical doctor when, in truth and in fact, he is not.

39.   Defendant Mowrey, as the "Director of Scientific Affairs" for Defendant Basic Research, and as a "consultant" to Defendant Dynakor, is responsible for the design, content, approval, distribution and publication of all Akävar advertisements disseminated during the Class Period, including the specific advertisements viewed by Plaintiffs, as alleged in this FAC.

40.   Even though he bears the title of "consultant," Defendant Mowrey is an insider to Defendants' business enterprise and he has access to Defendants' computer networks and records.

41.   Defendant Mowrey's intentional tortious acts and personal participation in the wrongful conduct underlying this class action deprive him of any protection he might otherwise have for his personal liability under the corporate shield doctrine, or otherwise.

42.   Defendant Mowrey is the subject of the FTC Injunction described in ¶ 17 of this FAC.  Defendant Mowrey's activities with regard to the marketing, advertising and sales of Akävar constitute a violation of the FTC Injunction, and such violation is evidence of Defendants' scheme or artifice to defraud Plaintiffs and Class members.

**Defendant Friedlander**

43.   Defendant Friedlander, the self-proclaimed "marketing guru" of Defendant Basic Research, is a citizen and resident of the State of Utah with a place of business located at 5742 West Harold Gatty Drive, Salt Lake City, Utah 84116.  Defendant Friedlander has been publicly described as the "idea man" behind the numerous advertising campaigns for dietary supplements carried out by Defendants and their affiliated companies.

44.   Defendant Friedlander is a "marketing consultant" to, among others, Defendants Gay, Mowrey, Basic Research and Dynakor.  Friedlander is directly involved in the development, endorsement, advertising, marketing and promotion of Basic Research products, including Akävar.  Friedlander is responsible for the design, content, approval, distribution and publication of Defendants' advertisements, including the above-referenced Akävar advertisements viewed by Plaintiffs.

45.   Although he is not an employee of either Basic Research or Dynakor, Defendant Friedlander maintains his offices at the corporate headquarters of Defendant Basic Research.

46.   In 1993, Defendants Friedlander and Basic Research entered into a royalty agreement and/or covenant not to sue, pursuant to which Friedlander is entitled to receive a "royalty" payment for each sale of various products marketed by Basic Research.

47.   Defendant Friedlander is the subject of the FTC Injunction in ¶ 17 of this FAC. Friedlander's activities with regard to the marketing, advertising and sales of Akävar constitute a violation of the FTC Injunction, and such violation is evidence of Defendants' scheme or artifice to defraud Plaintiffs and Class members.

48.   Previously, Defendant Friedlander has been  the subject of "Cease and Desist"
Orders and "False Representation" Orders issued by the U.S. Postal Service in connection
with his activities concerning the marketing and sale of weight-loss dietary supplements
called "Intercal-SX" and "Metabolite-2050," both of which were falsely advertised as causing
weight loss in virtually all users, as causing weight loss without willpower or  caloric
restricting diets or exercise, as preventing foods from being converted into stored fat, as
being supported by scientifically sound clinical studies, and as allowing obese persons to lose
weight while continuing to eat all the food that such persons wanted.  *In the Matter of the
Complaint Against W.G. Charles Company, Customer Service Distribution Center, Inc., Mitchell K.
Friedlander, Harris Friedlander, and Michael Meade,* U.S. Postal Service Docket No. 19/10 (Sept.
10, 1985) & *In the Matter of the Complaint Against The Robertson-Taylor Company, Intra-Medic
Formulations, Inc., Customer Service Distribution Center, Inc., Mitchell K. Friedlander, Harris
Friedlander, and Michael Meade,* U.S. Postal Service Docket Nos. 19/104 and 19/162 (Sept. 10,
1985).  (A copy of the September 10, 1985 Order is attached hereto as Exhibit D).

**Doe Defendants**

49.   Doe Defendant Nos.  1-50 are other individuals and entities who are part of, or
have aided and abetted, the fraudulent activities and conspiracy alleged in this FAC.  The
identities of Does Defendant Nos. 1-50 are unknown to Plaintiffs at this time.

## STATEMENT OF FACTS

50.   Fraudulent weight loss products are an enormous problem in the United States.
In an October 2007 Federal Trade Commission ("FTC") study entitled *Consumer Fraud in the
United States:  The Second FTC Survey* (the "FTC Study"), the FTC stated that an estimated

2.1% of all consumers nationwide - representing a total of 4.8 million U.S. adults - purchased and used fraudulent weight-loss products during the preceding year.  The FTC Study found that "[m]ore consumers were victims of fraudulent weight-loss products than of any of the other specific frauds covered in the survey."  The FTC study describes the prototypical fraudulent weight-loss claim as products that were promoted "as making it easy to lose weight or allowing one to lose weight without diet or exercise."  As alleged in this FAC, the Akävar dietary supplement marketed, advertised and sold by Defendants during the Class Period is a prototypical fraudulent weight-loss product.

**History of Defendants' Enterprises**

51.  Defendants are all well experienced in the promotion, marketing and sale of alleged weight-loss products through false and deceptive advertising.  As alleged in ¶ 17 of this FAC, Defendants Gay, Mowrey and Friedlander are each the subject of the FTC Injunction.  These Defendants' activities with regard to the marketing, advertising and sales of Akävar during the class period constitute a violation of the FTC Injunction, and such violation is evidence of Defendants' scheme or artifice to defraud Plaintiffs and Class members.  As a result, every act that each of the Defendants undertook, or caused the other Defendants to undertake, to market, advertise and sell Akävar in the United States was part of a scheme or artifice to defraud Plaintiffs and Class members.

52.  At the center of Defendants' interrelated business enterprises lies Basic Research, which was created to capitalize on the above-referenced obesity and overweight epidemic and resulting interest in weight-loss products.  It is reportedly one of the largest nutraceutical companies in the U.S. with over $50 million in annual sales revenues.  Basic Research

markets, advertises and sells scores of products, which are marketed under the names of nearly a dozen companies – a practice that Defendant Gay has publicly stated is intended to confuse competitors by creating a convoluted and complex web of organizations and "protect our brands in the Wild West atmosphere that exists today in the supplement industry."  In fact, this web of interlocking entities was created by Defendants in order to confuse Defendants' competitors **and** consumers.

53.   Defendant Dynakor was created by Defendants with the intent to mislead consumers into believing there was a real, independent "laboratory" behind Akävar.  This fiction was openly acknowledged in internal corporate meetings conducted by Basic Research's management, including Defendants Gay, Mowrey, and Friedlander.

54.   Defendant Gay, as a principal of Defendant Basic Research and all affiliated companies created by Defendants for the sole purpose of illegally marketing weight loss products, is responsible for, among other things, the oversight and conduct of Defendants' illegal corporate enterprise.

55.   Defendant Mowrey, a psychologist who has previously (and unlawfully) held himself out to be a medical doctor, is responsible for, among other things, working with other persons to formulate "new" compounds comprised of the same "core ingredients," in order to create new opportunities for Defendants to illegally market their dietary supplements, which are nothing more than modern-day "snake oil."

56.   After a new compound has been formulated by Defendant Mowrey, typically Defendant Western Holdings is tasked with, among other things, developing and obtaining trademarks for product names and the names of different limited liability companies that give

consumers the false and misleading impression that a real "laboratory" stands behind the "new" dietary supplement product.

57.   Defendant Friedlander, who is the self-proclaimed "marketing guru" behind Defendants' business enterprises and products, has a long history of unlawful activity involving the marketing, advertising, promotion and sale of alleged weight-loss products. (Some of Defendant Friedlander's lengthy history of wrongdoing is alleged in ¶¶ 17 and 48 of this FAC.)  Despite his record of wrongdoing and violations of federal and state laws, Friedlander remains responsible for, among other things, developing the marketing and advertising "platform" for Defendants' dietary supplement products.

**Defendants' Pattern and Practice of Illegal Marketing and Advertising**

58.   For a number of years, Defendants have used the U.S. mails, interstate wire facilities (including Internet websites and television commercials), print advertising (including newspapers and magazines), and point-of-purchase advertising displays, in order to fraudulently misrepresent and illegally market weight-loss products.  Defendants' "track record" of disseminating false and misleading advertisements for dietary supplement products is relevant to show their scheme or artifice to defraud Plaintiffs and Class members in this case, and is relevant to demonstrate that Defendants have knowingly engaged in a "pattern of racketeering activity" in violation of Federal and Utah anti-racketeering statutes. Defendants' pervasive pattern of false and misleading advertising has, at times, featured Defendant Mowrey in a variety of roles, although he is invariably pictured in some of their advertisements in a scientific-looking white laboratory coat.  In advertisements for dietary supplements, Defendants have identified Mowrey as having an advanced degree in

psychopharmacology.  Mowrey's purported academic credentials are false; in fact, Mowrey has a degree in psychology, and his trumped-up titles of "Director of Scientific Affairs" of Defendant Basic Research and "President and Director" of American Phytotherapy Research Laboratory (a/k/a DBM Enterprises) are nothing more than sham credentials intended to mislead consumers into believing that such entities are reputable and independent entities.

59.  Defendants have previously caused advertisements to be sent through the U.S. mail and published in national magazines, and sold in interstate commerce a product known as "Zotrin."  Similar to the illegal marketing of Akävar to Plaintiffs and Class members during the Class Period, among the claims contained in Defendants' advertisements for that dietary supplement were proclamations that "Zotrin" was a "European 'Miracle Pill'" that "Restricts caloric intake automatically," and that "you cannot fail … because you don't have to do anything more than remember to take your easy-to-swallow Zotrin," and that "Published Clinical Studies Prove 100% Success."

60.  Each of the above-referenced public statements made by Defendants in marketing "Zotrin" was false and misleading.  In fact, that dietary supplement was not from Europe but was, instead, contrived and developed by Defendants in their Utah facility. Further, Defendants' other claims were not supported by clinical studies because "Zotrin" was never clinically tested before being sold to the consuming public.

61.  Defendants have also previously caused advertisements to be sent through the U.S. mail and published in national magazines for a product known as "Automatic Weight Loss Compound."  Similar to the illegal marketing of Akävar during the Class Period, among the claims contained in Defendants' "Automatic Weight Loss Compound" advertisements

were the assertion that "Automatic Weight Loss Compound" was a "European

Breakthrough" that "Reduces Caloric Intake Automatically" and that you "lose weight …

without 'dieting'" and that "Groundbreaking Study Proves 100% Success."

62.   Each of the above-referenced statements made and disseminated by Defendants

in marketing "Automatic Weight Loss Compound" was false and misleading.  In particular,

the product was not from Europe but was, instead, contrived and developed by Defendants

in their Utah facility.  Further, the other claims were not supported by clinical studies

because "Automatic Weight Loss Compound" had never been clinically tested before being

sold to the consuming public.

63.   One of the products at issue in the enforcement proceeding that resulted in the

FTC Injunction (as alleged in ¶ 17 of this FAC), and involving Defendants Gay, Mowrey and

Friedlander, was marketed and sold as "Anorex."  "Anorex" is a trade name registered by

Basic Research.  Like Akävar, "Anorex" was marketed, advertised, and sold as a weight-loss

product that was "clinically established" and specifically designed to "overcome your genetic

predisposition" to be overweight, despite Anorex never having been tested in any clinical

study.

64.   At relevant times, Defendants also marketed a variety of topically-applied gels

which they falsely claimed to be "patented spot reducing gels" that "emulsifies fat on

contact," which were the "first clinically proven anorectic agents developed specifically for"

"pear-shaped women," "apple-shaped women," and to "reduce tummy fat."  Defendants'

false and misleading advertisements advised that consumers should not rub too much of the

gel on the body at the same time because there was no way for the body to utilize the fat

released from the topically applied gel.  These advertisements, like the advertisements for

Akävar disseminated during the Class Period, merely echoed those of Defendants' other

advertisements, which made virtually identical claims, but which were found by the FTC to

be unsubstantiated and led to the entry of the FTC Injunction, as  described in ¶ 17 of this

FAC.

64.   Many of Defendants' weight loss products have been marketed to consumers as

being "clinically proven," despite the fact that Defendants use the same so-called "studies" to

support their claims of clinical efficacy for the multiple, discrete products.  Defendants hide

the fact that neither they nor anyone else has ever studied the effect of the various

*combinations* of ingredients they indiscriminately mix together in their dietary supplements.

 Instead, all of the claims for the products marketed by Defendants rely on the same

preliminary Danish study, reported in 2001, on the effect of three South American herbs

(guarana, yerba mate and damiana) on gastric emptying rates to support the claim that the

same pill will result in "weight loss without exercise."  Sometimes, Defendants also purport

to rely on a study of the effects of caffeine on Navy Seals in training; however, that study

provides no basis for Defendants' claims regarding their dietary supplements.

**Defendants' False and Misleading Advertising of Akävar**

66.   As they had done many times over the past twenty years or more, Defendants

created Akävar as a means of fraudulently capitalizing on America's obesity and overweight

epidemic and resulting interest in weight-loss products.

67.   Under the direction and control of Defendants Basic Research and Gay,

Defendant Mowrey formulated a compound comprised of "core ingredients" that

Defendants had used in previous dietary supplement products they collectively and fraudulently marketed for the purpose of creating a "new" product that they could fraudulently promote and sell to consumers, including Plaintiffs and Class members.  That product would become Akävar.

68.  In and around the same time, and acting in concert with Defendants Gay, Mowrey, Basic Research and Dynakor, Defendant Friedlander developed the marketing and advertising campaign for Akävar, and Defendant Western Holdings licensed the trademark rights for "Dynakor" in order to give the impression that a real "laboratory" stood behind the bogus product.

69.  The result of Defendants' concerted efforts was the formation of the limited liability company known as "Dynakor Pharmacal," an affiliate of Basic Research that was created for the purpose of fraudulently marketing, advertising and selling Akävar to Plaintiffs and Class members.

70.  In support of these wrongful activities, Defendant Bydex provided employees to the other Defendants for sales and administrative services associated with the fraudulent marketing, advertising and sales of Akävar.

71.  On December 12, 2006, the U.S. Patent and Trademark Office ("USPTO") listed an application for the trademark "Akävar 20/50" by Dynakor Pharmacal IP Holdings, an affiliate of Defendants that was acting on behalf of Defendants.  Subsequently, on May 3, 2007, the USPTO listed a trademark application for Akävar to Defendant Dynakor.  Starting on or about this date, Defendants began marketing Akävar to Plaintiffs and Class members

throughout the United States.  Such sales of the product to consumers have continued to date.

72.  Since May 2007, Defendants have caused false and misleading advertisements for Akävar to be sent through the U.S. mail, published in national magazines, posted on the Internet, displayed in retail stores across the country ("point-of-purchase"), and broadcast on television.  The acts and practices of Defendants as alleged have been in or affecting interstate commerce.  (Copies of certain of the print and Internet advertisements disseminated by Defendants are attached hereto as Exhibit E.)

73.  Defendants' marketing blitz, engineered by Defendant Friedlander and approved and endorsed by Defendants Gay, Mowrey, Basic Research and Dynakor, was designed to saturate  television, Internet, point-of-purchase and print media with Defendants' false and misleading claims concerning Akävar.

74.  The core of Defendants' fraudulent representations regarding Akävar consists of the following statements which were presented in most, if not all, of Defendants' television, Internet, point-of-purchase and print advertisements, including those advertisements viewed by Plaintiffs:

> "Eat all you want & still lose weight."
>
> "European Weight-Loss Breakthrough"
>
> "Automatic Caloric Restriction"

75.  Defendants' false and misleading advertising for Akävar also asserts a number of other so-called "facts," including the following:

> Akävar-20/50 *literally causes excess fat to be pulled from bulging parts of your body!*

As Akävar-20/50 restricts caloric intake to below your daily caloric requirement, you literally pull excess fat from all over your body, including your waist, hips, thighs and buttocks. . . leaving your body thinner, trimmer and sexier than you ever thought possible. Akävar-20/50 **helps draw out bulging pockets of fat and prevents the further conversion and storage of excess fat all over your body**. This remarkably effective formula works so fast and is so easy to use that before you have time to be discouraged you will have lost pounds and inches of ugly, hard-to-get-at, figure-destroying fat.

Akävar-20/50 will produce an extraordinary, unparalleled loss of body weight! Akävar–20/50 is the perfect weight-loss compound for tough weight-loss problems. This amazing **formulation is the result of years of intensive research and scientific evaluation. Not one, but a team of doctors working in a recognized medical university discovered the potent caloric-restricting qualities** of the Akävar-20/50 formulation, and the research team at Dynakor Pharmacal is proud to have played a major role in bringing this new generation of fast-acting caloric restrictors to the general public. . . at an affordable price.

An entirely new generation of "diet pills"

An entirely **new generation of powerful, foolproof, bio-active weight-loss compounds that automatically reduce caloric intake**. . . eliminating traditional dieting, calorie counting, strenuous exercise, fad diets, supermarket "miracle" pills, Japanese wonder diets, rubber suits, belts, creams or anything else you have ever tried before.

**The only thing you have to do is remember to take your easy-to-swallow Akävar-20/50 tablets each and every day. That's it!**

**Akävar-20/50 is the only weight-loss compound that works automatically**. There is absolutely no need to count calories, no need to consciously lower your caloric intake, no need for expensive, pre-measured meals. . . and no need to give up your favorite foods! Why? Because Akävar-20/50 reduces caloric intake. . . automatically.

76.  In fact, Defendants' above-referenced advertising claims – claims that are

common to all Akävar advertisements, whether they are disseminated by U.S. mail or

interstate wire facilities (including via the Internet and television) – are false, misleading,

deceptive and inaccurate.  Further, Defendants, and each of them, knew at the time of dissemination that the above-referenced advertising claims were false, misleading, deceptive and inaccurate.

77.  Contrary to Defendants' advertising claims, Akävar was neither developed "in Europe," nor was it available for purchase in Europe prior to its introduction in the United States; in fact, the product was developed by Defendants at their Salt Lake City, Utah, headquarters.

78.  Akävar's formulation was not the result of "years" of "intensive research."  Nor does Akävar represent a "new generation of powerful, foolproof, bio-active weight-loss compounds."  To the contrary, for years Defendants have been falsely marketing the same active ingredients found in Akävar  under different product names and company names.

79.  Contrary to Defendants' representations, Akävar has not undergone "scientific evaluation" by a "team of doctors;" nor has Akävar been tested in controlled random clinical trials.  In fact, no reliable scientific evidence supports any of Defendants' claims about the purported weight-loss effects of Akävar .

80.  Contrary to Defendants' representations, Akävar has not been tested for safety or efficacy, it is not a part of a "new generation of fast-acting caloric restrictors," and there are no "tests prov[ing] virtually 100% success."

81.  Contrary to Defendants' representations, a person cannot eat all the food that he or she wants and still lose weight.  Akävar does not "pull fat from bulging body parts."

82.  Defendants' false and misleading claims have not been limited to Akävar advertisements. For example, in an article written for dissemination via the Business Wire on

February 7, 2007, Defendants intentionally misled consumers as to the evaluation and testing of the product, claiming that Defendant Mowrey (a psychologist) had "reviewed the substantiation for [Akävar's claims]" on behalf of Defendant Dynakor.  In the same interview/press release for Business Wire, Defendants presented Mowrey as an "independent reviewer" who was not involved with the development of the product.  To falsely portray Mowrey as "independent," Mowrey was even presented as questioning the "flamboyant" advertising for Akävar, even though he personally approved the advertisement(s) in question.  In addition to falsely presenting Mowrey as an "independent reviewer" and someone "not involved with the development of the product," Defendants purposefully misled consumers who saw the interview/press release by presenting Mowrey as a "Doctor."

83.  In fact, Defendant Mowrey is not a medical doctor.  Nor is he even remotely "independent."  As previously alleged, Mowrey is a principal shareholder of Defendant Basic Research, he is a paid "consultant" to Defendant Dynakor, and is a key figure in Defendants' illegal enterprise.

84.  The above-referenced interview/press release quoted Mowrey, who was speaking on behalf of all Defendants, as saying:

> Frankly I don't like the way the ad looks, either, and I certainly wouldn't be as flamboyant with the headlines. . . . But forget about the way the ad looks. The real question is whether or not a diet pill can really let you eat all you want and still lose weight? In regards to Akävar-20/50, the facts are the facts and scientific documentation has confirmed that virtually everyone in the study who used Akävar's active compound -- 23 out of 24 participants, to be exact -- lost weight. That's the bottom line."

85.  The February 7, 2007 press release goes on to quote "Dr. Mowrey" as saying that after the supposed first "study" of Akävar: "I suggested a second clinical trial, which has yet

to be published, to examine whether Akävar could have altered the hunger hormone.  It did."  In fact, neither a "first" nor a "second"  "study" or clinical trial of Akävar has ever been conducted by Defendants or anyone acting on their behalf.

86.  Finally, there is no clinical or scientific support for Defendants' representations that Akävar has the ability to cause pockets of fat to be pulled from bulging parts of consumers' bodies, working automatically if the consumer simply remembers to take an easy-to-swallow tablet.  To the contrary, there is no reliable scientific evidence that the product works at all.

## CLASS ACTION ALLEGATIONS

87.  Plaintiffs bring this lawsuit as a nationwide class action on behalf of themselves and all other similarly situated members of the Class, as defined below, pursuant to the Federal Rule of Civil Procedure 23(a) and (b) (3).  This class action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.  The Class is defined as follows:

> All persons or entities who or that purchased within the United States, not for resale or assignment, an Akävar 20/50 Fast Acting Caloric Restricting Compound.

88.  Excluded from the Class are (a) Defendants, any entity or division in which any of the Defendants has a controlling interest, and its/their legal representatives, officers, directors, assigns and successors; and (b) this Court and any member of the Your Honor's immediate family and courthouse staff.

89.  The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is presently unknown, and can only be ascertained from

records maintained by, and in the possession and control of, Defendants, they have

acknowledged that as of January 25, 20008: (a) sales of Akävar in the State of California

exceeded $2 million; (b) more than $10 million of product inventory was located on retail

store shelves throughout the country; (c) Defendants had spent over $5 million on Akävar

print advertising; and (d) in California alone, Defendants had spent over $450,000 on

television advertising.  Accordingly, the Class consists of many thousands of Class members.

90.   The claims of the representative Plaintiffs are typical of the claims of the Class

because the representative Plaintiffs, like all Class members, purchased Akävar and have

suffered injury as a result.

91.   Moreover, the factual bases of Defendants' misconduct are common to all Class

members, and Defendants' misrepresentations, omissions and acts of concealment resulted

in injury to all members of the Class.

92.   There are numerous questions of law and fact common to all Class members and

those questions predominate over any questions that may affect only individual Class

members, including, but not limited to the following:

a.   Whether Defendants engaged in a pattern of fraudulent, deceptive and
misleading conduct targeting  the public through their marketing, advertising, promotion and
sale of Akävar;

b.   Whether Defendants misrepresented the efficacy of Akävar;

c.   Whether the acts and omissions of Defendants violated RICO;

d.   Whether the acts and omissions of Defendants violated Section 76-10-1603(3)
and (4) of UPUAA, Utah Code Ann. § 76-10(3) and (4);

e.   Whether Defendants should be enjoined from the continued unlawful
marketing, advertising, promotion, distribution and sale of Akävar;

f.  Whether Defendants were unjustly enriched by their acts and omissions, at the expense of Plaintiffs and the Class;

g.  Whether Defendants made material misrepresentations of fact, or omitted to state material facts to Plaintiffs and the Class regarding the marketing, promotion and advertising of Akävar, which material misrepresentations or omissions operated as fraud and deceit upon Plaintiffs and the Class;

h.  Whether Plaintiffs and the Class have sustained damages and loss as a result of Defendants' actions; and

i.  Whether the actions of Defendants were willful and malicious, or manifested knowing and reckless indifference and disregard toward the rights of Plaintiffs and the Class.

93.  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained counsel highly experienced in prosecuting class actions, including actions involving defective consumer goods and dietary supplements.

94.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of Class members and have the resources to do so.  Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.  In fact, after Plaintiffs commenced this class action, Defendants sent to each of the Plaintiffs checks purportedly representing refunds of the amounts of money each Plaintiff had spent for Akävar .  By filing this class action, Plaintiffs had accepted a duty to act in the best interests of the Class; as a result, each of them insisted that Defendants create a fund to reimburse other defrauded consumers, and cease the deceptive advertising.  Defendants refused to do so.  Plaintiffs, acting solely in the interests of the Class, refused to accept this personal benefit and returned the checks to Defendants.

95.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Because of the relatively small size of the individual Class

members' claims, absent a class action most Class members would likely find the cost of litigating their claims against Defendants to be prohibitive.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

### (For Violations of Section 1962(c) and (d) of RICO)

96.   Paragraphs 1-95 of this FAC are realleged and incorporated by reference.  This claim, which asserts violations of Section 1962(c) and (d) of RICO, 18 U.S.C. § 1962(c) and (d), is asserted against Defendants Gay, Mowrey and Friedlander.

97.   At all times relevant to this class action, Defendants Gay, Mowrey and Friedlander, and each of them, was a "person," as that term is defined in Section 1961(3) of RICO, 18 U.S.C. § 1961(3).

98.   At all times relevant to this class action, Defendant Basic Research, was an "enterprise," as that term is defined in Section 1961(4) of RICO, 18 U.S.C. § 1961(4), engaged in or affecting trade or commerce.  In the alternative, Defendant Dynakor was an "enterprise," as that term is defined in Section 1961(4) of RICO, 18 U.S.C. § 1961(4), engaged in or affecting trade or commerce.

99.   At all times relevant to this class action, Defendants Gay, Mowrey and Friedlander, and each of them, did willfully and with the purpose to defraud consumers, engage in fraudulent conduct, including acts constituting (a) mail fraud, in violation of 18 U.S.C. §1341;  (b) wire fraud, in violation of 18 U.S.C. §1343; and (c)  interstate

transportation of money taken by fraud, in violation of 18 U.S.C. § 2314 by engaging in the following acts:

      a.  Fraudulently claimed that Defendants' product has been "clinically proven" when it was not;

      b.  Fraudulently represented that Defendants' product was a "European Weight-Loss Breakthrough," when the product was neither developed nor sold in Europe;

      c.  Fraudulently claimed that consumers could "Eat All You Want & Still Lose Weight" simply by using Defendants' product;

      d.   Fraudulently representing that Defendants' product offers a "foolproof" alternative to weight loss with "guaranteed success"; and

      e.  Fraudulently representing that consumers could lose weight "WITHOUT GRUELING DIET AND EXERCISE REGIMENS," simply by using Defendants' product.

      100. As a result of the foregoing fraudulent activities, Defendants have engaged in a pervasive pattern of unlawful and unfair business practices, causing harm to Plaintiffs and the members of the Class.  Defendants' fraudulent conduct, as described above, constitutes a scheme or artifice to defraud Plaintiffs and Class members.

      101. In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme to defraud, Defendants either individually or in combination with themselves, used and caused to be used the U.S. mail by both placing and causing to be placed letters, marketing and sales materials, advertisements, agreements and

other matters in depositories and by removing or causing to be removed letters and other mailable matters from depositories, in violation of the mail fraud statute, 18 U.S.C. § 1341.

102. In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme or artifice to defraud, Defendants either individually or in combination with themselves, used or caused to be used interstate wire communications to transmit or disseminate false, fraudulent and misleading communications and information, in violation of the wire fraud statute, 18 U.S.C. § 1343.  Defendants' use of interstate wire facilities included advertising Akävar through television commercials and Internet postings, as well as interstate telephone calls from Plaintiffs and Class members who were seeking to purchase the product and/or complain about its non-performance.

103. In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme or artifice to defraud, Defendants either individually or in combination with themselves, transported, transmitted, or transferred in interstate commerce money, of the value of $5,000 or more, representing the proceeds of sales of Akävar to consumers, knowing the same to have been taken by fraud from Plaintiffs and Class members.

104. Each of the numerous mailings, interstate wire communications and interstate transportations that were made in furtherance of Defendants' scheme to defraud Plaintiffs and Class members constitute separate and distinct acts of "racketeering activity," as that term is defined in Section 1961(1) of RICO, 18 U.S.C. § 1961(1).

105. The fraudulent and deceptive activities engaged in by Defendants Gay, Mowrey and Friedlander, and each of them, in marketing Akävar to Plaintiffs and Class members

involve and affect interstate commerce.  As alleged in this FAC, Defendants Gay, Mowrey

and Friedlander have caused their affiliated entities to market, sell and deliver Akävar

throughout the United States.

106. By committing such offenses, which victimized Plaintiffs and thousands of Class

members, and which offenses continue today and are likely to continue in the future,

Defendants Gay, Mowrey and Friedlander, and each of them, have engaged in a "pattern of

racketeering activity," as that term is defined in Section 1961(5) of RICO, 18 U.S.C. §

1961(5).

107. At all times relevant to this class action, Defendants Gay, Mowrey and

Friedlander, and each of them, have conducted or participated, directly or indirectly, in the

management and operation of an "enterprise," as defined in § 98; namely, Basic Research, or,

in the alternative, Dynakor, through a pattern of racketeering activity, in violation of Section

1962(c) of RICO, 18 U.S.C. § 1962(c).

108. At all times relevant to this class action, Defendants Gay, Mowrey and

Friedlander, and each of them, have conspired to conduct or participate, directly or

indirectly, in the management and operation of an "enterprise," as identified in § 98; namely,

Basic Research, or, in the alternative, Dynakor, through a pattern of racketeering activity, in

violation of Section 1962(d) of RICO, 18 U.S.C. § 1962(d).

109. Plaintiffs and Class members who purchased Akävar have been injured in their

business or property and, therefore, have standing to sue Defendants Gay, Mowrey and

Friedlander and recover damages and the costs of bringing this class action under Section

1964(c) of RICO, 18 U.S.C. § 1964(c).

110. By virtue of their violations of Section 1962(c) and (d) of RICO, 18 U.S.C. §
1962(c) and (d), Defendants Gay, Mowrey and Friedlander, and each of them, are jointly and
severally liable to Plaintiffs and Class members for three times the damages that Plaintiffs
and Class members suffered as a result of Defendants' scheme to defraud.

## SECOND CAUSE OF ACTION

### (For Violations of Section 1962(c) and (d) of RICO)

111. Paragraphs 1-110 of this FAC are realleged and incorporated by reference.  This
claim, which asserts violations of Section 1962(c) and (d) of RICO, 18 U.S.C. § 1962(c) and
(d), is asserted against Defendants Basic Research, Dynakor, Western Holdings, Bydex, Gay,
Mowrey and Friedlander.

112. At all times relevant to this class action, Defendants Basic Research, Dynakor,
Western Holdings, Bydex, Gay, Mowrey and Friedlander, and each of them, was a "person,"
as that term is defined in Section 1961(3) of RICO, 18 U.S.C. § 1961(3).

113. At all times relevant to this class action, Defendants Basic Research, Dynakor,
Western Holdings, Bydex, Gay, Mowrey and Friedlander constituted an association-in-fact
"enterprise," as that term is defined in Section 1961(4) of RICO, 18 U.S.C. § 1961(4).

114. At all times relevant to this class action, Defendants Basic Research, Dynakor,
Western Holdings, Bydex, Gay, Mowrey and Friedlander, and each of them, did willfully and
with the purpose to defraud consumers, engage in fraudulent conduct, including acts
constituting (a) mail fraud, in violation of 18 U.S.C. § 1341; (b) wire fraud, in violation of 18
U.S.C. § 1343; and (c) interstate transportation of money taken by fraud, in violation of 18
U.S.C. § 2314 by engaging in the following acts:

      a. Fraudulently claimed that Defendants' product has been "clinically proven" when it was not;

      b. Fraudulently represented that Defendants' product was a "European Weight-Loss Breakthrough," when the product was neither developed nor sold in Europe;

      c. Fraudulently claimed that consumers could "Eat All You Want & Still Lose Weight" simply by using Defendants' product;

      d. Fraudulently representing that Defendants' product offers a "foolproof" alternative to weight loss with "guaranteed success"; and

      e. Fraudulently representing that consumes could lose weight "WITHOUT GRUELING DIET AND EXERCISE REGIMENS" simply by using Defendants' product.

    115. As a result of the foregoing fraudulent activities, Defendants have engaged in a pervasive pattern of unlawful and unfair business practices, causing harm to Plaintiffs. Defendants' fraudulent conduct, as described above, constitutes a scheme or artifice to defraud Plaintiffs and Class members.

    116. In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme or artifice to defraud, Defendants either individually or in combination with themselves, used and caused to be used the U.S. mail by both placing and causing to be placed letters, marketing and sales materials, advertisements, agreements and other matters in depositories and by removing or causing to be removed letters and other mailable matters from depositories, in violation of the mail fraud statute, 18 U.S.C. § 1341.

117. In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct due to fraud, Defendants either individually or in combination with themselves, used or caused to be used wire communications to transmit or disseminate false, fraudulent and misleading communications and information, in violation of the Federal wire fraud statute, 18 U.S.C. § 1343.  Defendants' use of interstate wire facilities included advertising Akävar through television commercials and internet postings, as well as interstate telephone calls from Plaintiffs and Class members who were seeking to purchase the product and/or complain about its non-performance.

118. In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme or artifice and to defraud, Defendants either individually or in combination with themselves, transported, transmitted, or transferred in interstate commerce money, of the value of $5,000 or more, representing the proceeds of sales of Akävar to consumers, knowing the same to have been taken by fraud from Plaintiffs and Class members.

119. Each of the numerous mailings, interstate wire communications and interstate transportations that were made in furtherance of Defendants' scheme to defraud Plaintiffs and Class members constitute separate and distinct acts of "racketeering activity," as that term is defined in Section 1961(1) of RICO, 18 U.S.C. § 1961(1).

120. The fraudulent and deceptive activities engaged in by Defendants Basic Research, Dynakor, Bydex, Western Holdings, Gay, Mowrey and Friedlander, and each of them, in marketing Akävar to Plaintiffs and Class members involve and affect interstate commerce.

As alleged in this FAC, Defendants Basic Research, Dynakor, Bydex, Western Holdings, Gay, Mowrey and Friedlander market, sell and deliver Akävar throughout the United States.

121. By committing such offenses, which victimized Plaintiffs and thousands of Class members, and which offenses continue today and are likely to continue in the future, Defendants, and each of them, have engaged in a "pattern of racketeering activity," as that term is defined in Section 1961(5) of RICO, 18 U.S.C. § 1961(5).

122. At all times relevant to this class action, Defendants Basic Research, Dynakor, Western Holdings, Bydex, Gay, Mowrey and Friedlander, and each of them, have conducted or participated, directly or indirectly, in the management and operation of an "enterprise," namely, the association-in-fact identified in ¶ 113, through a pattern of racketeering activity, in violation of Section 1962(c) of RICO, 18 U.S.C. § 1962(c).

123. At all times relevant to this class action, Defendants Basic Research, Dynakor, Western Holdings, Bydex, Gay, Mowrey and Friedlander, and each of them, have conspired to conduct or participate, directly or indirectly, in the management and operation of an "enterprise," namely, the association-in-fact identified in ¶ 113, through a pattern of racketeering activity, in violation of Section 1962(d) of RICO, 18 U.S.C. § 1962(d).

124. Plaintiffs and Class members who purchased Akävar have been injured in their business or property and, therefore, have standing to sue Defendants Basic Research, Dynakor, Western Holdings, Bydex, Gay, Mowrey and Friedlander and recover treble damages and the costs of bringing this class action under Section 1964(c) of RICO, 18 U.S.C. § 1964(c).

125. By virtue of their violations of Section 1962(c) and (d) of RICO, 18 U.S.C. §

1962(c) and (d), Defendants Basic Research, Dynakor, Western Holdings, Bydex, Gay,

Mowrey and Friedlander, and each of them, are jointly and severally liable to Plaintiffs and

Class members for three times the damages that Plaintiffs and Class members suffered as a

result of Defendants' scheme to defraud.

## THIRD CAUSE OF ACTION

### (For Violations of Section 76-10-1603(3) and (4) of UPUAA)

126. Paragraphs 1-125 of this FAC are realleged and incorporated by reference.  This

claim, which asserts violations of Section 76-10-1603(3) and (4) of UPUAA, Utah Code Ann.

§76-10(3) and (4), is asserted against Defendants Gay, Mowrey and Friedlander.

127. At all times relevant to this class action, Defendants Gay, Mowrey and

Friedlander, and each of them, was a "person," as that term is defined in Section 76-10-

1602(3) of UPUAA, Utah Code Ann. § 76-10-1602(3).

128. At all times relevant to this class action, and as described in this FAC, Defendant

Basic Research, was an "enterprise," as that term is defined in Section 76-10-1602(1) of

UPUAA, Utah Code Ann. § 76-10-1602(1).  In the alternative, Defendant Dynakor was an

"enterprise," as that term is defined in Section 76-10-1602(1) of UPUAA, Utah Code Ann. §

76-10-1602(1).

129. At all times relevant to this class action, Defendants Gay, Mowrey and

Friedlander, and each of them, engaged in acts constituting mail fraud, in violation of 18

U.S.C. § 1341; wire fraud, in violation of 18 U.S.C. § 1343; and interstate transportation,

transmittals, or transfers of money taken by fraud, in violation of in violation of 18 U.S.C. §

2314.  Each of the numerous mailings, communications and transportations, transmittals, or transfers using interstate facilities that were made in furtherance of Defendants' scheme to defraud Plaintiffs and Class members constitute separate and distinct acts of "unlawful activity," as that term is defined in Section 76-10-1602(4)(g) of UPUAA, Utah Code Ann. § 76-10-1602(4)(g).

130. The fraudulent and deceptive activities engaged in by Defendants Gay, Mowrey and Friedlander, and each of them, in marketing Akävar to Plaintiffs and Class members involve and affect interstate commerce.  As alleged in this FAC, Defendants Gay, Mowrey and Friedlander market, sell and deliver Akävar throughout the United States.

131. By committing such offenses, which victimized Plaintiffs and thousands of Class members, and which offenses continue today and are likely to continue in the future, Defendants, and each of them, have engaged in a "pattern of unlawful activity," as that term is defined in Section 76-10-1602(2) of UPUAA, Utah Code Ann. § 76-10-1602(2).

132. At all times relevant to this class action, Defendants Gay, Mowrey and Friedlander, and each of them, have conducted or participated, directly or indirectly, in the management and operation of an "enterprise," namely, Basic Research, or, in the alternative, Dynakor, through a pattern of racketeering activity, in violation of Section 76-10-1603(3) of UPUAA, Utah Code Ann. § 76-10-1603(3).

133. At all times relevant to this class action, Defendants Gay, Mowrey and Friedlander, and each of them, have conspired to conduct or participate, directly or indirectly, in the management and operation of an "enterprise," namely, Basic Research, or,

in the alternative, Dynakor, through a pattern of racketeering activity, in violation of Section 76-10-1603(4) of UPUAA, Utah Code Ann. § 76-10-1603(4).

134. Plaintiffs and Class members who purchased Akävar have been injured in their person or property and, therefore, have standing to sue Defendants Gay, Mowrey and Friedlander under Section 76-10-1605(1) of UPUAA, Utah Code Ann. § 76-10-1605(1).

135. By virtue of their violations of Section 76-10-1603(3) and (4) of UPUAA, Utah Code Ann. § 76-10-1603(3) and (4) Defendants Gay, Mowrey and Friedlander, and each of them, are jointly and severally liable to Plaintiffs and Class members for two times the damages that Plaintiffs and Class members suffered as a result of Defendants' scheme to defraud.

## FOURTH CAUSE OF ACTION

### (For Violations of Section 76-10-1603(3) and (4) of UPUAA)

136. Paragraphs 1-135 of this FAC are realleged and incorporated by reference. This claim, which asserts violations of Section 76-10-1603(3) and (4) of UPUAA, Utah Code Ann. § 76-10-1603(3) and (4), is asserted against Defendants Basic Research, Dynakor, Western Holdings, Bydex, Gay, Mowrey and Friedlander.

137. At all times relevant to this class action, Defendants Basic Research, Dynakor, Western Holdings, Bydex, Gay, Mowrey and Friedlander, and each of them, was a "person," as that term is defined in Section 76-10-1602(3) of UPUAA, Utah Code Ann. § 76-10-1602(3).

138. At all times relevant to this class action, Defendants Basic Research, Dynakor, Western Holdings, Bydex, Gay, Mowrey and Friedlander constituted an association-in-fact

"enterprise," as that term is defined in Section 76-10-1602(1) of UPUAA, Utah Code Ann. §

76-10-1602(1).

139. At all times relevant to this class action Defendants Basic Research, Dynakor,

Western Holdings, Bydex, Gay, Mowrey and Friedlander, and each of them, engaged in acts

constituting mail fraud, in violation of 18 U.S.C. § 1341; wire fraud, in violation of 18 U.S.C.

§ 1343; and interstate transportation, transmittals, or transfers of money taken by fraud, in

violation of 18 U.S.C. § 2314. Each of the numerous mailings, communications and

transportations, transmittals, or transfers using interstate facilities that were made in

furtherance of Defendants' scheme to defraud Plaintiffs and Class members constitute

separate and distinct acts of "unlawful activity," as that term is defined in Section 76-10-

1602(4)(g) of UPUAA, Utah Code Ann. § 76-10-1602(4)(g).

140. The fraudulent and deceptive activities engaged in by Defendants Basic Research,

Dynakor, Western Holdings, Bydex, Gay, Mowrey and Friedlander, and each of them, in

marketing Akävar to Plaintiffs and Class members involve and affect interstate commerce.

As alleged in this FAC, Defendants Basic Research, Dynakor, Western Holdings, Bydex,

Gay, Mowrey and Friedlander market, sell and deliver Akävar throughout the United States.

141. By committing such offenses, which victimized Plaintiffs and thousands of Class

members, and which offenses continue today and are likely to continue in the future,

Defendants, and each of them, have engaged in a "pattern of unlawful activity," as that term

is defined in Section 76-10-1602(2) of UPUAA, Utah Code Ann. § 76-10-1602(2).

142. At all times relevant to this class action, Defendants Basic Research, Dynakor,

Western Holdings, Bydex, Gay, Mowrey and Friedlander, and each of them, have conducted

or participated, directly or indirectly, in the management and operation of an "enterprise," as described in ¶ 138 of this FAC, through a pattern of racketeering activity, in violation of Section 76-10-1603(3) of UPUAA, Utah Code Ann. § 76-10-1603(3).

143. At all times relevant to this class action, Defendants Basic Research, Dynakor, Western Holdings, Bydex, Gay, Mowrey and Friedlander, and each of them, have conspired to conduct or participate, directly or indirectly, in the management and operation of an "enterprise," as described in ¶ 138 of this FAC, through a pattern of racketeering activity, in violation of Section 76-10-1603(4) of UPUAA, Utah Code Ann. § 76-10-1603(4).

144. Plaintiffs and Class members who purchased Akävar have been injured in their business or property and, therefore, have standing to sue Defendants Basic Research, Dynakor, Western Holdings, Bydex, Gay, Mowrey and Friedlander under Section 76-10-1605(1) of UPUAA, Utah Code Ann. § 76-10-1605(1).

145. By virtue of their violations of Section 76-10-1603(3) and (4) of UPUAA, Utah Code Ann. § 76-10-1603(3) and (4), Defendants Basic Research, Dynakor, Western Holdings, Bydex, Gay, Mowrey and Friedlander, and each of them, are jointly and severally liable to Plaintiffs and Class members for two times the damages that Plaintiffs and Class members suffered as a result of Defendants' scheme to defraud.

## FIFTH CAUSE OF ACTION

### (Fraud)

146. Paragraphs 1-145 of this FAC are realleged and incorporated by reference. This claim, which asserts a claim for fraud, is asserted against Defendants Basic Research, Dynakor, Western Holdings, Bydex, Gay, Mowrey and Friedlander.

147. Defendants' business practices in marketing, advertising and promoting Akävar were and are intentionally and willfully false and fraudulent.

148. In marketing, advertising and promoting Akävar, Defendants willfully and intentionally made material representations regarding the product that were known by Defendants to be false and untrue.

149. Defendants' unlawful conduct, as set forth in this FAC has the capacity to mislead or deceive consumers, including Plaintiffs and members of the Class.

150. Defendants' willful and intentional false promises and misrepresentations, as set forth in this FAC, are material because they relate to matters that reasonable persons, including Plaintiffs and members of the Class, would attach importance to in their purchasing decisions or conduct regarding the purchase of Akävar.

151. Plaintiffs and the members of the Class uniformly relied on Defendants' misrepresentations and promises and, under the circumstances described above, such reliance was justifiable and unreasonable.

152. As a result of Defendants' fraudulent practices, as described herein, Plaintiffs and the members of the Class have suffered the loss of money and property.

153. The actions of Defendants were willful and malicious and manifested knowing and reckless indifference and disregard toward the rights of Plaintiffs and the Class.

## SIXTH CAUSE OF ACTION

### (Violation of UCSPA and Other Consumer Protection Statutes)

154. Paragraphs 1-153 of this FAC are realleged and incorporated by reference.   This claim, which asserts violation of the UCSPA or, in the alternative, the consumer protection

laws of Utah and the other states, and the District of Columbia, is asserted against Defendants Basic Research, Dynakor, Western Holdings, Bydex, Gay, Mowrey and Friedlander.

155. In connection with the purchase and sale of Akävar, Plaintiffs and the Class are "consumers" and Defendants are "suppliers," within the meaning of the UCSPA and the similar consumer protection statutes of the other states.

156. The purchase of Akävar by Plaintiffs and the members of the Class, as described herein, constitute "consumer transactions" within the meaning of the UCSPA and the similar consumer protection statutes of the other states.

157. Defendants' business practices in marketing, advertising and promoting Akävar, as described herein, are intentionally and willfully false, misleading and fraudulent.

158. In marketing, advertising and promoting Akävar, Defendants willfully and intentionally made representations regarding the product that were known by Defendants to be false and untrue.

159. Defendants' unlawful conduct, as set forth in this FAC, had (and has) the capacity to mislead or deceive consumers, including Plaintiffs and the members of the Class. Such unlawful conduct did mislead and deceive Plaintiffs and the members of the Class, and continues to do so.

160. Defendants' willful and intentional false promises and misrepresentations, as set forth in this FAC, are material because  they relate to matters as to which reasonable persons, including Plaintiffs and members of the Class, would attach importance in their purchasing decisions or conduct regarding the purchase of Akävar.

161. Defendants' misrepresentations in their marketing and advertising concerning the efficacy of Akävar, as described herein, constitute false, deceptive, misleading and unconscionable practices, in violation of the UCSPA.

162. Defendants acted in the face of prior notice that their conduct was deceptive, unfair and unconscionable.  It is well established under the UCSPA, as well as the FTC Act, that material omissions and misrepresentations regarding a defective product's characteristics and efficacy constitute a violation of the statute.  Further, the FTC has previously admonished Defendants, and brought enforcement proceedings against Defendants, concerning the same or similar misconduct as that alleged in this FAC, and Defendants have entered into consent judgments prohibiting such conduct.

163. Application of UCSPA to all Class members throughout the country, regardless of their state or residence, is appropriate because, inter alia:

      a)     Defendants' nationwide sales operations are controlled, directed and originate from Salt Lake City, Utah;

      b)     Defendants' marketing operations, including the decisions regarding how to advertise, promote and sell Akävar, are made in Salt Lake City, Utah, and internal marketing personnel and external marketing consultants all are based there;

      c)     Defendants' telephone sales force, customer service, and Internet website and advertising operations are controlled, directed and originate in Salt Lake City, Utah;

      d)     Defendants' principal place of business is in Salt Lake City, Utah;

      e)     All significant employees of Defendants are based in Salt Lake City, Utah;

      f)     Internet sales of Akävar are placed, fulfilled and carried out in Salt Lake City, Utah; and

      g)     The facts and circumstances of this case include such numerous contacts with the State of Utah as to create a state interest in applying Utah's consumer laws to Defendants, making application of Utah law to the entire Class appropriate.

164. As a result of Defendants' violations of UCSPA, Plaintiffs and the Class have suffered damages, and are entitled to recover such damages, equitable and restitutionary measures as are available under UCSPA, together with appropriate penalties, including attorneys' fees and costs of suit.

165. In the alternative to the application of the UCSPA on a nationwide basis, the conduct of Defendants alleged above constitutes unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the other state consumer protection and unfair competition statutes listed below in addition to the UCSPA:

| | |
|---|---|
| Alabama: | Alabama Code §8-19-1, *et seq.* |
| Alaska: | Alaska Stat. §45.50.471, *et seq.* |
| Arizona: | Ariz. Rev. Stat. Ann §44-1521, *et seq.* |
| Arkansas: | Arkansas Code §4-88-101, *et seq.* |
| California: | California Bus. & Prof. Code §17200, *et seq.* and California Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.* |
| Colorado: | Colo. Rev. Stat. §6-1-101, *et seq.* |
| Connecticut: | Conn. Gen. Stat. §42-110a, *et seq.* |
| Delaware: | Del. Code Ann. §2511, *et seq.*; §2531, *et seq.* |
| District of Columbia: | District of Columbia Code §28-3901, *et seq.* |
| Florida: | Florida Stat. §501.201, *et seq.* |
| Georgia: | Off. Code Ga. Ann. § 10-1-390 *et seq.* |
| Idaho: | Idaho Code §48-601, *et seq.* |
| Hawaii: | Haw. Rev. Stat. §480-1, *et seq.;* §481A-1, *et seq.* |

| | |
|---|---|
| <u>Idaho</u>: | Idaho Code §48-601, *et seq.* |
| <u>Illinois</u>: | Ill. Comp. Stat. Ann. 505/1, *et seq.*; 510/1 *et seq.* |
| <u>Indiana</u>: | Ind. Code Ann. §24-5-0.5-1, *et seq.* |
| <u>Iowa</u>: | Iowa Code Ann. §714.16, *et seq.* |
| <u>Kansas</u>: | Kan. Stat. Ann. §50-623, *et seq.* |
| <u>Kentucky</u>: | Ky. Rev. Stat. Ann. §367.110, *et seq.* |
| <u>Louisiana</u>: | La. Rev. Stat. Ann. §51-1401, *et seq.* |
| <u>Maine</u>: | 5 Maine Rev. Stat. Ann. §205-A *et seq.* |
| <u>Maryland</u>: | Md. Code Ann. Com. Law. §13-101, *et seq.* |
| <u>Massachusetts</u>: | Mass. Gen. Laws §93A:1 *et seq.* |
| <u>Michigan</u>: | Mich. Comp. Laws Ann. §445.901, *et seq.* |
| <u>Minnesota</u>: | Minn. Stat. §8.31; §325D.43, *et seq.*; §325F.67; §325F.68 *et seq.* |
| <u>Mississippi</u>: | Miss. Code Ann. §75-24-1 *et seq.* |
| <u>Missouri</u>: | Mo. Rev. Stat. §407.010 *et seq.* |
| <u>Montana</u>: | Montana Code §30-14-101, *et seq.* |
| <u>Nebraska</u>: | Nebraska Rev. Stat. §59-1601, *et seq.;* §87-301, *et seq.* |
| <u>Nevada</u>: | Nev. Rev. Stat. Chapter 598A.0903, *et seq.* |
| <u>New Hampshire</u>: | N.H. Rev. Stat. § 358-A:1, *et seq.* |
| <u>New Jersey</u>: | N.J. Stat. Ann. §56:8-1, *et seq.* |
| <u>New Mexico</u>: | New Mexico Stat. §57-12-1,  *et seq.* |
| <u>New York</u>: | New York Gen. Bus. Law §349,  *et seq.* |
| <u>North Carolina</u>: | North Carolina Gen. Stat. §75-1.1, *et seq.* |

| | |
|---|---|
| North Dakota: | N.D. Cent. Code §§51-15-01, *et seq.* |
| Ohio: | Ohio Rev. Code Ann. §1345.01, *et seq.*; §4165.01, *et seq.* |
| Oklahoma: | Okla. Stat. tit. 78, §5, *et seq.* |
| Oregon: | Or. Rev. Stat. §646.605, *et seq.* |
| Pennsylvania: | Pa. Stat. Ann. tit. 73, §201-1, *et seq.* |
| Rhode Island: | R.I. Gen. Laws §6-13.1-1, *et seq.* |
| South Carolina: | S.C. Code Ann. §39-5-10, *et seq.* |
| South Dakota: | S.D. §37-24-1, *et seq.* |
| Tennessee: | Tenn. Code Ann. §§ 47-18-101, *et seq.* |
| Texas: | Tex. Bus. & Com. Code Ann. §17.41, *et seq.* |
| Vermont: | Vt. Stat. Ann tit 9, §2451, *et seq.* |
| Virginia: | Va. Code Ann. §59.1-196, *et seq.* |
| Washington: | Wash. Rev. Code Ann. §19.86.010, *et seq.* |
| West Virginia: | W.V. Code §46A-1-101 *et seq.* |
| Wisconsin: | Wisc. Stat. Ann. § 100.18; §100.20, *et seq.* |
| Wyoming: | Wyo. Stat. Ann. §40-12-101, *et seq.* |

166. As a direct and proximate result of Defendants' unlawful conduct in violation of the UCSPA, or in the alternative, of the UCSPA and these other state consumer statutes, Plaintiffs and members of the Class have been injured and suffered loss of money and property.

**Notice To Attorneys General Of Action**

167. A copy of this FAC shall be mailed to the Attorneys General, Administrators, Commissioners, or other officers, as required by laws for the States of Connecticut, Georgia, Hawaii, Illinois, Kansas, Louisiana, Nevada, New Jersey, Oregon and Texas within three days of the filing of this FAC with this Court pursuant to Conn. Gen. Stat. § 42-100g(c), Ga. Code § 10-1-399, Haw. Rev. Stat. § 48013.3, 815 ILCS § 505/6, Kan. Stat. § 50-634(g), La. Rev. Stat. § 51:1409(B), Nev. Rev. Stat. § 598A.210(3), N.J.S.A. § 56:8-20, Or. Rev. Stat. § 646.638(2) and Tex. Bus. & Com. Code § 17501(a)(1).

## SEVENTH CAUSE OF ACTION

### (Unjust Enrichment)

168. Paragraphs 1-167 of this FAC are realleged and incorporated by reference. This claim, which asserts unlawful and fraudulent conduct and resulting unjust enrichment, is asserted against Defendants Basic Research, Dynakor, Western Holdings, Bydex, Gay, Mowrey and Friedlander.

169. As a result of Defendants' wrongful and fraudulent conduct, Plaintiffs and members of the Class have conferred benefits upon Defendants in the form of payment for Defendants' product.

170. Defendants were at all times aware that the benefits conferred upon by them by Plaintiffs and the Class were the result of Defendant's fraud and misrepresentation.

171. Allowing Defendants to retain these unjust profits and other benefits would offend traditional notions of justice and fair play. Under these circumstances, it would be inequitable for Defendants to retain the benefits and allowing them to do so would induce companies to misrepresent key characteristics of their products in order to increase sales.

172. Defendants are in possession of funds that were wrongfully obtained from Plaintiffs and the Class and which should be disgorged as ill-gotten gains.

## EIGHTH CAUSE OF ACTION

(Negligent Misrepresentation)

173. Paragraphs 1-172 of this FAC are realleged and incorporated by reference.  This claim for negligent misrepresentation is asserted against Defendants Basic Research, Dynakor, Western Holdings, Bydex, Gay, Mowrey and Friedlander.

174. In marketing, advertising and promoting Akävar, Defendants carelessly and negligently made representations regarding the product that Defendants knew or should reasonably have known or reasonably foreseen misrepresented material facts and omitted to state material facts.

175. Defendants have a pecuniary interest in the marketing, advertising and promotion of Akävar and in making the careless, unreasonable and negligent misrepresentations and omissions alleged herein, including to Plaintiffs and members of the Class.

176. In their marketing, advertising and promoting of Akävar and in making the careless, unreasonable and negligent misrepresentations and omissions alleged herein, including the representations made to Plaintiffs and the members of the Class, Defendants

were in a superior position than Plaintiffs and the members of the Class to know the material facts.

177. In their marketing, advertising and promoting of Akävar and in making the careless, unreasonable and negligent misrepresentations and omissions alleged herein, including the representations made to Plaintiffs and the members of the Class, Defendants should have reasonably foreseen that Plaintiffs and members of the Class were likely to rely upon the misrepresentations.

178. Defendants' careless, unreasonable and negligent misrepresentations and omissions, as set forth in this FAC, are material in that they relate to matters to which reasonable persons, including Plaintiffs and the members of the Class, would attach importance in their purchasing decisions or conduct regarding the purchase of Akävar.

179. Under the circumstances, Defendants had a duty to disclose material, truthful information that they omitted in their careless, unreasonable and negligent misrepresentations and omissions, as set forth in this FAC.

180. As alleged in this FAC, Plaintiffs and the members of the Class uniformly relied on Defendants' careless, unreasonable and negligent misrepresentations and omissions, and under the circumstances described above such reliance was reasonable and justifiable.

181. As a result of Defendants' careless, unreasonable and negligent statements and omissions as described herein, Plaintiffs and the members of the Class have been injured and have suffered loss of money and property, and they are entitled to recover damages from Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

A.      An order certifying a Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiffs as the representatives of the Class, and designating their counsel as counsel for the Class;

B.      On the First Cause of Action, against Defendants jointly and severally in an amount equal to treble the amount of damages suffered by Plaintiffs and members of the Class as proven at trial plus interest and attorneys' fees and expenses;

C.      On the Second Cause of Action, against Defendants jointly and severally in an amount equal to treble the amount of damages suffered by Plaintiffs and members of the Class as  proven at trial plus interest and attorneys' fees and expenses;

D.      On the Third Cause of Action, against Defendants jointly and severally in an amount equal to two times the amount of damages suffered by Plaintiffs and members of the Class as proven at trial plus interest and attorneys' fees and expenses;

E.      On the Fourth Cause of Action, against Defendants jointly and severally in an  amount equal to two times the amount of damages suffered by Plaintiffs and members of the Class as proven at trial plus interest and attorneys' fees and expenses;

F.      On the Fifth Cause of Action, against Defendants jointly and severally, in an amount equal to the actual damages suffered by Plaintiffs and members of the Class as proven at trial plus interest, as well as punitive damages in an amount sufficient to punish Defendants and deter similar future conduct;

G.      On the Sixth Cause of Action, against Defendants jointly and severally, in an amount equal to the actual damages suffered by Plaintiffs and members of the Class as proven at trial plus interest, together with all allowable penalties and damage multipliers available under the UCSPA and other state consumer protection laws, and attorneys' fees and expenses;

H.      On the Seventh Cause of Action, against Defendants jointly and severally, for disgorgement of Defendants' unjust enrichment and/or imposition of a constructive trust upon Defendants' ill-gotten monies, freezing Defendants' assets, and requiring Defendants to pay restitution to Plaintiffs and the Class and to restore all funds acquired by means of any act or practice declared by this Court to be unlawful, deceptive, fraudulent or unfair, and/or a violation of laws, statutes or regulations;

I.      On all Causes of Action, such other civil penalties and punitive damages to the fullest extent permitted by applicable law;

J.      An order requiring Defendants to immediately cease their wrongful conduct as set forth above, as well as enjoining Defendants from continuing to falsely market and advertise, conceal material information and conduct business via the unlawful and unfair business acts and practices complained of herein; an order requiring Defendants to engage in a corrective notice campaign; and an order requiring Defendants to refund to Plaintiffs and all members of the Class the funds paid to Defendants for their fraudulent, defective product;

K.      For the reasonable attorneys' fees and the costs of prosecuting this action;

L.      For statutory pre-judgment interest; and

M.      For such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

**Wilentz, Goldman & Spitzer, P.A.**

May 23, 2008

By: _____/s/_____

Kevin P. Roddy
Lynne M. Kizis
Daniel R. Lapinski
**Wilentz, Goldman & Spitzer, P.A.**
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, NJ  07095
Telephone: (732) 636-8000
Facsimile:  (732) 855-6117
kroddy@wilentz.com
lkizis@wilentz.com
dlapinski@wilentz.com

Jan Graham (01231)
**Graham Law Offices**
150 South 600 East, Suite 5B
Ambassador Plaza
Salt Lake City, UT  84102
Telephone:  (801) 596-9199
Facsimile:  (801) 596-9299
jan@grahamlawoffices.com

Scott R. Shepherd
James C. Shah
Nathan C. Zipperian
**Shepherd, Finkelman, Miller
 & Shah LLC**
35 E. State Street
Media, PA 19063
Telephone:  (610) 891-9880
Facsimile:  (610) 891-9883
sshepherd@sfmslaw.com
jshah@sfmslaw.com
nzipperian@sfmslaw.com

Tracey Buck-Walsh
**Law Office of Tracey Buck-Walsh**
6 Reyes Court
Sacramento, California 95831
Telephone:  (916) 392-8990
Facsimile:  (916) 393-2023
tracey@tbwlaw.com

Thomas Mauriello
**Law Office of Thomas D. Mauriello, A.P.C.**
209 Avenida Fabricante, Suite 125
San Clemente, CA  92672
Telephone: (949) 542-3555
Facsimile: (949) 606-9690
tomm@maurlaw.com


**Attorneys for Plaintiffs and the Class**