IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PAMELA MILLER; RANDY HOWARD; and DONNA PATTERSON; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BASIC RESEARCH, LLC; DYNAKOR PHARMACAL, LLC; WESTERN HOLDINGS, LLC; DENNIS GAY; DANIEL B. MOWREY, Ph.D; MITCHELL K. FRIEDLANDER; and DOES 1 through 50,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR APPROVAL OF NATIONWIDE CLASS NOTICE PROGRAM AND DENYING DEFENDANTS' MOTION FOR STAY<br><br><br><br>Case No. 2:07-CV-871 TS |

Before the Court is Plaintiffs Pamela Miller, Randy Howard, and Donna Patterson's ("Plaintiffs") Motion for Approval of Nationwide Class Notice Program[1] and Defendants Basic Research, LLC, Dynakor Pharmacal, LLC, Dennis Gray, Daneil B. Morey, and Mitchell K.

---

[1]Docket No. 158.

1

Friedlander's (collectively, "Basic Research" or "Defendants") Motion to Stay.[2]  A hearing was held on these Motions on February 28, 2011.  The Court took the Motions under advisement and now enters the following Order.

## I. MOTION FOR APPROVAL OF CLASS NOTICE

On September 2, 2010, in the Court's Order certifying the class in this action, the Court "ORDERED that the parties meet and confer regarding notice and submit a proposed order within 60 days."[3]  Although the parties met and conferred as ordered, the parties were unable to come to an agreement as to how to notify the class.  On November 12, 2010, Plaintiff submitted to the Court the present Motion for Approval of Nationwide Class Notice Program, which seeks approval of Plaintiffs' proposed class notice program over Basic Research's objections.

Plaintiffs' proposed notice plan is allegedly based on the class definition provided by the Court in its September 2, 2010 Order, where the Court held that the class shall comprise "those persons who purchased Akävar in reliance of the slogan 'Eat all you want and still lose weight.'"[4]  In Plaintiffs' proposed notice, under the heading of "Who is Included?", the notice states: "The Court decided that the Class includes: Everyone who purchased Akävar after seeing the marketing slogan 'Eat all you want and still lose weight.'"[5]  Plaintiffs' notice plan proposes to disseminate this notice via the internet, radio, print, and television.

---

[2] Docket No. 173.

[3] Docket No. 151.

[4] Docket No. 151, at 25-26.

[5] Docket No. 161, Ex. 1, at Attachment A.

2

In Basic Research's opposition to this Motion, Basic Research notes that its objection stems not from the proposed notice plan per se, but rather this Court's definition of the certified class. Basic Research argues that the inclusion of the word "reliance" in the class definition renders it unworkable. As Basic Research explains, since a notified individual's class membership is generally presumed unless the notified individual opts-out, determining reliance at the class membership stage would necessarily rely upon either this Court making an individual assessment as to class membership, or leaving to the individual the determination of reliance before opting-out.

Basic Research's concerns were echoed by Judge Hartz of the Tenth Circuit, who noted in dissent of the Tenth Circuit's denial of Defendants' Petition for Panel Rehearing:

> It seems to me that there is a class-action issue in this case that should be explored on an interlocutory appeal. The district court's definition of the class is peculiar. The court's order granting certification of the class defines the class as "limited to those persons who purchased Akavar in reliance on the slogan 'Eat all you want and still lose weight.'" This is not the definition sought by Plaintiffs. They sought a class defined as "All persons in the United States who purchased, for consumption and not for resale or assignment, Akavar 50/50 from a retail sales establishment, directly from Defendants, or from a website controlled or operated by Defendants." They made good arguments justifying such a class, and it is not clear to me why the district court rejected that definition of the class and chose what it did. Indeed, the court said it would leave the issues of individual reliance for determination during the damages stage of the case if Plaintiffs established a violation during the class proceedings. But there would be no need to establish individual reliance for members of the class if one had to prove reliance even to be a member of the class.[6]

Of course, Basic Research is careful not to endorse Judge Hartz's proposal to reconsider Plaintiffs' broader class definition. Instead, Basic Research merely suggested that the issue be discussed at a hearing.

---

[6]Docket No. 159, at 10 n.6.

Prior to the February 28, 2011 hearing, the Court ordered that the parties come prepared to propose alternate definitions to the certified class at the February 28, 2011 hearing. At the hearing, Plaintiffs renewed their request for the broader definition it initially requested in its motion for class certification. Basic Research declined to provide a specific alternative for the Court to consider. Instead, Basic Research requested the Court de-certify the class.

After reviewing the parties' respective arguments, Judge Hartz's dissent, and the case law concerning class definition and notification, the Court finds it necessary to modify its definition of the class. By including the word "reliance" in the class definition, the Court inadvertently created an ascertainability issue that it previously did not anticipate. In its own review of the case law, the Court finds the class definition provided by *In re New England Mutual Life Insurance Company Sales Practices Litigation* instructive and persuasive.[7] There, the district court faced claims by various Plaintiffs that the New England Life Insurance Company had used deceptive and manipulative sales tactics to encourage new and existing policyholders to purchase certain life insurance products. Like the present action, the plaintiffs argued that the class should be defined as all purchasers during the relevant damage period,[8] while the defendant argued, among other things, that a class should not be certified because of the need for individualized findings of reliance.[9] After considering several class definitions, the court decided to certify a class of persons who were "presented" with the allegedly deceptive and manipulative information

---

[7] 183 F.R.D. 33 (D. Mass. 1998).

[8] *Id.* at 37.

[9] *Id.* at 43-44.

and purchased certain life insurance products thereafter.[10] The court found that this avoided the overly broad definition proposed by the plaintiffs, while avoiding the defendant's concerns regarding reliance at the class notification stage.

The Court finds this reasoning instructive and applicable to the instant dispute. The Court therefore modifies its definition of the certified class to the following:

*Persons who purchased Akävar after seeing or hearing the marketing slogan "Eat all you want and still lose weight" during the relevant damages period.*

In reviewing Plaintiffs' proposed class notification, the Court notes that Plaintiffs have presented several variations of this language, including "if you purchased Akävar either partially or wholly because of the slogan 'Eat all you want and still lose weight,' you are a member of the Class."[11] Now that the Court has modified its definition, the Court expects all such references to the class definition in the class notification to conform to the specific language presented by the Court.

The Court, therefore, approves Plaintiffs' class notification program—with the above stated modifications—and will grant Plaintiffs' Motion.

## II. MOTION TO STAY

Basic Research moves the Court to stay these proceedings pending the outcome of an enforcement action which the Federal Trade Commission ("FTC") has filed against Basic Research, captioned *United States v. Basic Research, LLC et al.*, Case No. 2:09-CV-972 DB (the "FTC Action").

---

[10] *Id.* at 37.

[11] Docket No. 160-1 at 5, 14.

A.  LEGAL STANDARD

As this Court has set forth previously,[12] the Court has inherent power to grant a stay pending the result of other proceedings.[13] The Supreme Court has described this power as "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[14] To make this determination "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."[15] "Factors relevant to the court's decision are: (1) whether a stay would promote judicial economy; (2) whether a stay would avoid confusion and inconsistent results; and (3) whether a stay would unduly prejudice the parties or create undue hardship."[16]

The party seeking a *Landis* stay carries a heavy burden:

> [A party seeking] a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.[17]

---

[12]*Gale v. Brinker Int'l Payroll Co., L.P.,* 2010 WL 3835215, at * 1 (D. Utah Sep. 29, 2010).

[13]*Nederlandse ERTS-Tankersmaatchappij, N.V. v. Isbarndtsen Co.*, 339 F.2d 440, 441 (2d Cir. 1964).

[14]*Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

[15]*Id.* at 254-55.

[16]*Evergreen Holdings, Inc. v. Sequoia Global, Inc.*, 2008 WL 4723008, *2 (W.D. Okla. 2008).

[17]*Landis*, 299 U.S. at 255.

B. RELEVANT BACKGROUND

In 2006, the FTC and Basic Research entered into a global settlement that resolved an administrative action filed against Basic Research by the FTC and a 2004 lawsuit filed in this District by a Basic Research entity challenging aspects of the FTC's scientific substantiation standards for advertising claims. As part of this settlement, the FTC and Basic Research entered into a Consent Agreement containing a provision that Basic Research alleges explicitly permits Basic Research to make weight-loss and fat-loss claims in its advertisements, so long as Basic Research has "competent and reliable scientific evidence" for such claims.

In September of 2006, Basic Research provided copies of advertisements for certain of its products, including Akävar 20/50 at issue in this case, along with scientific substantiation supporting its advertisement claims for these products. Basic Research alleges that over the next two years, it and the FTC engaged in extensive discussions concerning these materials.

In 2009, Basic Research brought a declaratory action against the FTC in this Court captioned *Basic Research, LLC, et. al. v. Federal Trade Commission, et al.*, Case No. 2:09-CV-779 CW. Two months later, the FTC filed in this Court the FTC Action against Basic Research. Basic Research alleges that the FTC action challenges the adequacy of the scientific substantiation Basic Research possesses in support of its advertising claims for Akävar. Basic Research has moved to consolidate these cases and the motion is currently under advisement with Judge Waddoups of this Court.

C.  SUMMARY OF PARTIES' ARGUMENTS

Basic Research argues the present action should be stayed pending resolution of the FTC Action. Basic Research argues that all three of the factors typically weighed by courts in determining a stay weigh in its favor.

1.  *Judicial Efficiency*

As to judicial efficiency, Basic Research argues that the FTC litigation will necessarily resolve a key issue in this case. Here, in certifying the class, the Court noted that "the existence of a sufficient scientific basis [for Basic Research's advertisements] is a dispositive issue, a determination on that issue will resolve one way or another all of Plaintiffs' claims."[18] Basic Research alleges that the FTC litigation will address this very issue—namely, the interpretation of the "competent and reliable scientific evidence" term from the Consent Agreement and whether Basis Research had such reliable scientific evidence to substantiate its advertising claims for Akävar.

Basic Research argues that staying this case while the FTC Action resolves these issues will reduce unnecessary duplicative discovery requests, duplicative dispositive motions, and avoid wasting scarce judicial resources.

Plaintiffs argue that requiring Basic Research to defend a suit, in and of itself, is insufficient to warrant a stay.[19] Moreover, Plaintiffs note that Defendants are still proceeding in

---

[18]Docket No. 151, at 16.

[19]*See* Docket No. 173, at 6 (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005)).

two cases related to the FTC Action concerning another Basic Research product, Relacore.[20] Thus, Plaintiffs argue that there is no hardship on Defendants in proceeding on the merits in this case as well.

### 2. Risk of Inconsistent Results and/or Conclusions

Basic Research argues that as the issue of whether Basic Research had adequate science to substantiate its advertising claims is a dispositive issue in both cases, proceeding with this action raises a significant risk of inconsistent or contradictory rulings.

Plaintiffs argue that any risk of inconsistent rulings is overstated by Basic Research. Plaintiffs assert that any ruling in the FTC Action will have no preclusive effect in the present matter. Moreover, Plaintiffs argue that its claims here—RICO, UPUAA, and state consumer fraud—are distinct from the claims involved in the FTC Action—the FTC Act and the Consent Decree. Thus, Plaintiffs argue that Basic Research could prevail in the FTC Action yet still be found liable here.

### 3. Prejudice to the Parties

Basic Research further argues that Plaintiffs will not be harmed by a stay of these proceedings. Basic Research asserts that should the FTC prevail in the FTC Action, Plaintiffs will likely be entitled to the benefit of that ruling here. On the other hand, if Basic Research prevails, then there is no violation of the Consent Agreement and Plaintiffs are spared the effort of proceeding on the merits with their claims. Basic Research also notes that the FTC seeks the same injunctive relief in the FTC Action as Plaintiffs do in the present action.

---

[20]*See* Docket No. 173, at 6.

Finally, Basic Research notes that delay of these proceedings will not prejudice Plaintiffs. Basic Research notes that it is under a continuing obligation to preserve documents, therefore Plaintiffs' discovery efforts will not be harmed. Further, Basic Research alleges that the evidence in this matter is largely documentary, so there is little danger that Plaintiffs' case will be harmed by faded memories.

Plaintiffs argue that Basic Research has severely understated the prejudice running to Plaintiffs in the event the Court awards the requested stay. Plaintiffs note that this case has already been proceeding for nearly three years, and predates the FTC Action by nearly two years. Plaintiffs argue that a stay would delay for years the prosecution of Plaintiffs' claims, including Plaintiffs' request for injunctive relief. Related to this concern, Plaintiffs argue that a stay would prevent Plaintiffs from conducting discovery on this matter, which raises a risk that witnesses' memories may fade or otherwise become unavailable and evidence may be lost. Moreover, Plaintiffs argue that a stay of these proceedings may eliminate its ability to recover on its claims should it prevail in this litigation.

D.  DISCUSSION

In weighing the above stated arguments, the Court finds that Basic Research has failed to carry its heavy burden of justifying a stay. Although simultaneously pursuing litigation related to the same subject is inconvenient, this hardship does not outweigh the severe prejudice to Plaintiffs' claims in staying these proceedings. Plaintiffs' ability to gather evidence would be limited, if not eviscerated, by a stay of these proceedings. During the time the proposed stay would be in effect, there remains a high risk that evidence will be lost and witnesses' memories

will fade or they may become unavailable. This risk is magnified by the fact that the FTC Action is in its early stages, and may take years to resolve.

Additionally, any supposed benefit of awaiting the outcome of the FTC Action is marginal at best. Even if Basic Research prevails in the FTC Action, Plaintiffs could still proceed on their claims because the FTC Action would likely have no preclusive effect upon Plaintiffs. And even if the FTC prevails in the FTC Action, whether that decision would have preclusive effect against Basic Research in this action is a question of law which need not be decided at this juncture. Thus, Basic Research's requested stay would require Plaintiffs to stand idle on their claims for years, based on the mere possibility that a decision against Basic Research could be used preclusively in this action. Such a possibility is insufficient to warrant a stay in these circumstances.

The Court, therefore, finds the requested stay unwarranted and will deny Basic Research's Motion to Stay.

### III. CONCLUSION

It is therefore

ORDERED that Plaintiffs' Motion for Approval of Nationwide Class Notice Program (Docket No. 158) is GRANTED. It is further

ORDERED that Defendants' Motion to Stay (Docket No. 166) is DENIED.

DATED   March 2, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge