IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PAMELA MILLER; RANDY HOWARD; and DONNA PATTERSON; on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br><br><br><br>       vs.<br><br><br>BASIC RESEARCH, LLC; DYNAKOR PHARMACAL, LLC; WESTERN HOLDINGS, LLC; DENNIS GAY; DANIEL B. MOWRY, Ph.D.; MITCHELL K. FRIEDLANDER; and DOES 1 through 50,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO ENFORCE THE PARTIES' NATIONWIDE CLASS ACTION SETTLEMENT<br><br><br><br><br><br><br>Case No. 2:07-CV-871 TS |

This matter is before the Court on Plaintiffs' Motion to Enforce the Parties' Nationwide Class Action Settlement.  For the reasons discussed more fully below, the Court will grant Plaintiffs' Motion.

I.  BACKGROUND

This is a class action suit against Defendants Basic Research, LLC, Dynakor Pharmacal, LLC, Dennis Gray, Daniel B. Mowrey, and Mitchell K. Friedlander (collectively "Defendants"). This case arises out of the advertising for and sale of a weight-loss dietary supplement called Akävar 20/50, and is currently set for trial on April 7, 2014.  However, on June 18, 2012, the parties informed the Court that they were in the process of scheduling a mediation, and the Court gave the parties until September 14, 2012, to file a status report with the details of the mediation.[1]  The parties met with a mediator on September 10, 2012.  After the conclusion of the mediation, Defendants' counsel called the Court and informed it that the parties had reached a settlement.[2]  In addition, on September 14, 2012, the following joint status report was filed with the Court:

> 1.  The Parties jointly participated in mediation on September 10, 2012 with mediator Mr. Antonio Piazza in San Francisco, California.
> 2.  The mediation was ultimately successful.
> 3.  The Parties are now engaged in the process of preparing and finalizing a formal settlement agreement, together with a motion seeking Court approval of the agreement.[3]

At the close of the mediation, Defendant Dennis Gray, President and CEO of Defendant Basic Research, counsel for Plaintiffs, and counsel for Defendants each signed a term sheet with

---

[1]Docket No. 249.

[2]This fact was admitted by Defendants' subsequent counsel during the March 14, 2013 oral argument before the Court.

[3]Docket No. 253, at 2.

2

five numbered sections describing terms of the settlement (the "Term Sheet").[4]  The Term Sheet contained provisions for payment of Plaintiffs' costs, a class notice plan, a claim fund, an advertising agreement, an inclusion of FTC language in advertising, and attorneys' fees for class counsel.[5]

On October 4, 2012, Plaintiffs' counsel prepared a draft formal Settlement Agreement and General Release (the "Settlement Agreement").[6]  On October 26, 2012, Defendants returned a revised draft of the Settlement Agreement to Plaintiffs.[7]  Over the next few days, the Parties continued to make "linguistic changes" to the Settlement Agreement, and were in disagreement only over whether payment of attorneys' fees and expenses would be due 30 days or 120 days after the Settlement Agreement was approved by the Court.[8]  On November 16, 2012, Plaintiffs' counsel suggested that the parties present the Settlement Agreement to the Court despite the disputed provision, since it was not a material term that should slow down the settlement process.[9]

At this point, however, the relationship between the parties appears to have soured. Communication dropped off, and on December 18, 2012, counsel for Defendants filed a status

---

[4]Docket No. 264, Ex. 1.

[5]*Id.*

[6]Docket No. 264, at 3.

[7]*Id.*

[8]*Id.* at 4.

[9]*Id.*

report with the Court, stating that further negotiations were necessary and that "significant disagreement exists, at present, between the Parties to other material issues of the settlement."[10] Plaintiffs responded by filing its Motion to Enforce the Parties' Nationwide Class Action Settlement.  In late February, the Court was informed that Defendants had withdrawn their intention to settle.

## II.  DISCUSSION

A.    ADMISSIBILITY OF THE TERM SHEET

*1.    Statutory Privilege*

As a preliminary matter, the parties dispute the admissibility of the Term Sheet as evidence for the Court's consideration.  Defendants argue that since the Term Sheet was signed as part of a mediation that occurred in California, it is a privileged communication under Cal. Evid. Code § 1119, which bars, along with other communications, evidence of any writing "that is prepared for the purpose of, in the course of, or pursuant to, a mediation . . . ."  Plaintiffs, on the other hand, argue that the Term Sheet is admissible under Utah Code Ann. § 78B-10-106, which provides that "[t]here is no privilege . . . for a mediation communication that is: (a) in an agreement evidenced by a record signed by all parties to the agreement . . . ."

Although there is no federal mediation privilege, under Fed. R. Evid. 501 "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of

---

[10]Docket No. 261, at 2-3.

decision."  Accordingly, the Court applies the substantive law of the forum state, including

choice of law rules, to issues arising under state law.[11]

Utah courts have not specifically addressed what conflict of law rules should apply to

privileged communications.[12]  In the past, when Utah courts have considered questions of first

impression regarding choice of law, they have looked to Restatement (Second) of Conflict of

Laws as a basis for their analysis.[13]

Under the Restatement (Second) of Conflict of Laws § 139(2)

Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect.

The comments to § 139 explain that

Among the factors that the forum will consider in determining whether or not to admit the evidence are (1) the number and nature of the contacts that the state of the forum has with the parties and with the transaction involved, (2) the relative materiality of the evidence that is sought to be excluded, (3) the kind of privilege involved and (4) fairness to the parties.  If the contacts with the state of the forum are numerous and important, the forum will be more reluctant to give effect to the foreign privilege and to exclude the evidence than it would be in a case where the contacts are few and insignificant. . . .  The forum will be more inclined to give effect to the foreign privilege and to exclude the evidence if the facts that would

---

[11]*Grynberg v. Ivanhoe Energy, Inc.*, 2011 WL 3294351, at *1 (D. Colo. Aug. 1, 2011) (citing *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 (10th Cir. 2000)).

[12]*See Hercules, Inc. v. Martin Marietta Corp.*, 143 F.R.D. 266, 268 (D. Utah 1992).

[13]*Forsman v. Forsman*, 779 P.2d 218, 219 (Utah 1989) (applying the Restatement (Second) of Conflict of Laws to a choice of law case of first impression on the doctrine of interspousal immunity); *see also Hercules*, 143 F.R.D. 266, 268 (D. Utah 1992) (finding that "Utah conflicts of law rulings have not specifically addressed the issue of what conflicts of law rule should apply to allegedly privileged communications" and applying the Restatement (Second) of Conflicts).

5

be established by this evidence would be unlikely to affect the result of the case or could be proved in some other way. . . .  The forum will be more inclined to give effect to a privilege if it was probably relied upon by the parties.[14]

Even if the Court assumes that California is the state with the most significant relationship with the communication,[15] an analysis under the factors described in the comments to § 139 does not lead to any special reason to overcome the presumption that the forum policy favoring admission should be given effect.  The parties have significant contacts with the state of Utah, as each of the Defendants reside in or are headquartered in Utah, the litigation is centered in Utah, Plaintiffs' claims are under Utah and Federal law, and the dietary supplement which is the subject of the lawsuit is manufactured in Utah.  Under the second factor, the privilege is highly material to the resolution of this Motion, which favors admissibility under the laws of the forum state.  Finally, the parties have supplied no evidence that the parties selected California as the place of mediation in reliance on California's mediation privilege.  Instead, the parties appear to have traveled to California for the mediation because that was the place of business of the mediator they selected.  Considering these factors, the Court finds that it is appropriate to apply the Utah statute with regard to the question of whether there is a mediation privilege.

Defendants, however, argue that California law should apply to the mediation based on Utah's choice of law principles for contract disputes.  However, the result is the same under this

_____

[14]Restatement (Second) of Conflict of Laws § 139 cmt. d (1971).

[15]This is not certain under the Restatement.  The comments indicate that this is usually the state where the communication took place, but that when there was a prior relationship between the parties, the state of most significant relationship is the state where the "relationship was centered unless the state where the communication took place has substantial contacts with the parties and the transaction."  *Id.* cmt. e.

6

analysis.  Under Utah law, "the 'most significant relationship' test, explained in Restatement

(Second) Conflict of Laws section 188 is the 'appropriate rule for Utah courts to apply to a

conflict of laws question in a contract dispute.'"[16]

> "The Restatement provides:
> (1) The rights and duties of the parties with respect to an issue in contract are
> determined by the local law of the state which, with respect to that issue, has the
> most significant relationship to the transaction and the parties under the principles
> stated in § 6.
> (2) In the absence of an effective choice of law by the parties . . . , the contacts to
> be taken into account in applying the principles of § 6 to determine the law
> applicable to an issue include:
> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of
> business of the parties."[17]

The first two factors point to the application of California law.  The Term Sheet, if it is a

contract, was negotiated and contracted in California.  However, the remaining factors all point

to the application of Utah law.  As noted above, each of the Defendants reside in or are

headquartered in Utah, the litigation is centered in Utah, Plaintiffs' claims are under Utah and

Federal law, and the dietary supplement which is the subject of the lawsuit is manufactured in

Utah.  The relationship with California is centered on the fact that California was the place of

business of the mediator they selected, and is incidental.  All other facts concerning the subject

matter of the Term Sheet and the relationship between the parties are centered in Utah.

_____

[16]*Morris v. Health Net of Cal., Inc.*, 988 P.2d 940, 941 (Utah 1999) (quoting
*Am. Nat'l Fire Ins. Co. v. Farmers Ins. Exch.*, 927 P.2d 186, 190 (Utah 1996)).

[17]*Id.* at 941-42 (quoting Restatement (Second) of Conflict of Laws § 188 (1971)).

Therefore, the Court will apply Utah law in determining the admissibility of the Term Sheet.  Because the Term Sheet is an agreement evidenced by a record signed by all parties to it, the Court will consider it as evidence under the Utah statute.

       2.     *Confidentiality Agreement*

Defendants also dispute the admissibility of the Term Sheet under the provisions of a confidentiality agreement entered into by the parties prior to the mediation.  The confidentiality agreement states that "[a]ll statements made during the course of the mediation or in mediator follow-up thereafter at any time prior to complete settlement of this matter are privileged settlement discussions . . . and are non-discoverable and inadmissible for any purpose including in any legal proceeding."[18]  Additionally, the confidentiality agreement requires that

> [n]o aspect of the mediation shall be relied upon or introduced as evidence in any arbitral, judicial, or other proceeding, including, but not limited to:
> (a) Views expressed or suggestions made with respect to a possible settlement of the dispute;
> (b) Admissions made in the course of the mediation proceedings; and
> (c) Proposals made or views expressed by the mediator or the response of any party.[19]

Defendants argue that the Term Sheet is an "aspect" of the mediation, and that it is therefore barred by the confidentiality agreement.  Considering the term "aspect" in its broadest sense, nearly anything agreed upon by the parties during or after the mediation that relied in any way on the mediation discussions could be considered an aspect of mediation.  However, under this reading, the parties would never be able to actually settle, because they would be barred from

---

[18]Docket No. 265, Ex. A.

[19]*Id.*

ever informing the Court of a settlement, as it would necessarily arises out of an aspect of the mediation.

However, when the prohibition on introducing evidence of an "aspect" of the mediation is considered in conjunction with the earlier clause making privileged all "statements made . . . at any time prior to complete settlement," it becomes clear that the confidentiality agreement is only intended to bar admission of any statement or "aspect" of the mediation that occurs prior to a complete settlement.  Once settlement has been reached, the mediation is over and subsequent documentation of settlement terms are no longer aspects of the mediation.  This reading is consistent with the examples of "aspects" provided in the confidentiality agreement, namely: views of a possible settlement, admissions in the course of mediation, and proposals made by the mediator and the responses of parties.

Defendants argue that the Term Sheet should still be excluded as it was written prior to complete settlement.  However, this argument begs the question already before the Court.  If the Term Sheet was prepared as documentation of a settlement that had been reached, then it is not covered by the confidentiality agreement, as it is not a statement made prior to the complete settlement of the matter.  If, however, the Court finds that a complete settlement had not been reached prior to the drafting of the Term Sheet, then the Term Sheet is confidential information.

Defendants base their argument on *Moss v. Parr Waddoups Brown Gee & Loveless*, in which the Utah Court of Appeals did not allow the admission of an oral settlement agreement made under an identical confidentiality agreement at a mediation with the same mediator as the

instant case.[20]  Although the parties to *Moss* used the same mediator and confidentiality

agreement, the similarities to the instant case end there.  The settlement agreement at issue in

*Moss* was not made following the complete settlement of the matter.[21]  Instead, the settlement

was allegedly reached with a party who had not signed the confidentiality agreement, and

regarding an issue that was not the central subject of the mediation.[22]  The subject of the

mediation was not settled for nearly a year and a half after the mediation.[23]  The *Moss* court did

not consider the question of whether a statement would be admissible if it was made after a

complete settlement had been reached.

As will be discussed more fully below, the Court finds that the Term Sheet was drafted to

memorialize the key terms of a settlement that had been reached by the parties.  Therefore, it falls

outside the scope of the confidentiality agreement.

B.     THE SETTLEMENT AGREEMENT

"A trial court has the power to summarily enforce a settlement agreement entered into by

the litigants while litigation is pending before it."[24]  In so doing, "[i]ssues involving the

formation, construction and enforceability of a settlement agreement are resolved by applying

---

[20]197 P.3d 659, 664 (Utah Ct. App. 2008).

[21]*Id.* at 661-62.

[22]*Id.* at 662.

[23]*Id.* at 661-62.

[24]*United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993).

state contract law"[25]  "Under Utah law, courts will enforce settlement agreements 'if the record establishes a binding agreement and the excuse for nonperformance is comparatively unsubstantial.'"[26]  Furthermore, "[i]t is a basic and long-established principle of contract law that agreements are enforceable even though there is neither a written memorialization of that agreement nor the signatures of the parties, unless specifically required by the statute of frauds."[27]

As Defendants have withdrawn their intentions to settle the case, the primary question before the Court is whether Defendants had a change of heart after an enforceable agreement had been reached.  "[A] trial court has the power to enter a judgment enforcing a settlement agreement only if there is an enforceable contract."[28]  "'A condition precedent to the enforcement of any contract is that there be a meeting of the minds of the parties, which must be spelled out, either expressly or impliedly, with sufficient definiteness to be enforced.'"[29]  "It is not necessary that the contract provide for every collateral matter or possible contingency.  Rather, the requirement is that 'the parties themselves must have set forth with sufficient definiteness at least

---

[25]*United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000).

[26]*Nature's Sunshine Prods. v. Sunrider Corp.*, 2013 WL 563309, at *3 (10th Cir. Feb. 15, 2013) (unpublished) (quoting *Zions First Nat'l Bank v. Barbara Jensen Interiors, Inc.*, 781 P.2d 478, 479 (Utah Ct. App. 1989)).

[27]*Murray v. State*, 737 P.2d 1000, 1001 (Utah 1987).

[28]*John Deere Co. v. A & H Equip., Inc.*, 876 P.2d 880, 883 (Utah Ct. App. 1994).

[29]*On the Planet v. Intelliquis Int'l, Inc.*, 2000 WL 33363260, at *4 (D. Utah May 23, 2000) (quoting *King v. Nev. Elec. Inv. Co.*, 893 F. Supp. 1006, 1016 (D. Utah 1994)).

the essential terms of the contract.'"[30]  In addition, "[t]he conduct of both parties may also be considered in determining whether they entered into an agreement."[31]

"[T]he fact that the [agreement] was to be superseded by more formal documentation does not undermine the binding nature of what was agreed upon."[32]  "'The mere intention to reduce an oral or informal agreement to writing, or to a more formal writing, is not of itself sufficient to show that parties intended that until such formal writing was executed the parol or informal contract should be without binding force.'"[33]  "In addition, the fact that the parties later discussed an additional provision cannot serve to rescind or otherwise 'obliterate' a binding contract."[34]  However, "[i]f the parties intend to negotiate further the terms of an agreement, a manifestation of willingness to enter into the agreement is only preliminary, and does not demonstrate the existence of a binding contract."[35]

"The requirement that a district court review and approve a class action settlement before it binds all class members does not affect the binding nature of the parties' underlying

---

[30]*Id.* (quoting *King*, 893 F. Supp. at 1016).

[31]*McKelvey v. Hamilton*, 211 P.3d 390, 397 (Utah Ct. App. 2009) (citing *Goodmansen v. Liberty Vending Sys., Inc.*, 866 P.2d 581, 585 (Utah Ct. App. 1993)); *see On the Planet*, 2000 WL 33363260, at *5 (noting that the fact that counsel for the parties had called the Court to inform them that a settlement had been reached was evidence that the parties had reached an agreement).

[32]*On the Planet*, 2000 WL 33363260, at *5 (citing *Goodmansen*, 866 P.2d at 584-85).

[33]*Id.* (quoting *H. B. Zachry Co. v. O'Brien*, 378 F.2d 423, 426 (10th Cir. 1967)).

[34]*Id.*

[35]*Homestead Golf Club, Inc. v. Pride Stables*, 224 F.3d 1195, 1200-01 (10th Cir. 2000) (citing *Sackler v. Savin*, 897 P.2d 1217, 1221-22 (Utah 1995)).

agreement."[36]  "The reason for judicial approval is to ensure that other unrepresented parties

(absent class members) and the public interest are fairly treated by the settlement reached

between the class representatives and the defendants."[37]

Plaintiffs argue that the Term Sheet was signed to memorialize the key provisions of an

agreement reached between Plaintiffs and Defendants.  Under this argument, the fact that the

parties intended to later document the agreement in more detail does not change the fact that a

binding and enforceable agreement was reached at the mediation.  Defendants argue that key

provisions of a class settlement were not included in the Term Sheet and were yet to be

negotiated.  Under this argument, because the parties never had a meeting of the minds as to the

essential terms of a Settlement Agreement, there is no enforceable contract.

In support of its argument, Defendants point out that the Term Sheet does not contain the

terms of a release of Plaintiffs' claims, it does not discuss class members who purchased the

product after March 1, 2008, it does not contain the wording to be used in the settlement notice,

and it does not contain a proper definition of the "Claim Fund."[38]  Defendants focus their

arguments on the lack of any provisions for a release of claims, as this is a material provision of

any class settlement agreement.  Defendants argue that, "although Defendants anticipated a full

---

[36]*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) (citing *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008)).

[37]*Id.* at 594.

[38]Docket No. 266, at 10.

and complete release from all class members, the means for accomplishing this was never determined."[39]

However, the fact that the Term Sheet did not contain the details of these terms does not mean that the parties had not reached an agreement.  The Term Sheet does not contain any terms of consideration for Defendants.  However, such an unlikely agreement is only evidence that there were implied terms that the parties did not document in the Term Sheet.  Indeed, Defendants' argument that they expected a full release of claims is only confirmed by the draft Settlement Agreement that Plaintiffs contend was meant to formalize the agreement reached at the mediation.[40]  The Draft Settlement Agreement contains exactly the type of release that Defendants claim they intended.[41]  Despite Defendants' claims and the fact that several drafts of the Settlement agreement were passed back and forth, Defendants have put no evidence before the Court of any subsequent negotiations regarding the terms of a release or any of the other "key terms" that Defendants claim were missing from the Term Sheet.  The evidence before the Court is that the parties made some linguistic changes, filled in the details missing from the Term Sheet, and were negotiating the time period for payment of Plaintiffs' counsel.  None of these items are material terms to the Settlement Agreement.

Plaintiffs' claim that the parties reached a binding agreement is further supported by the fact that Defendants' counsel called the Court to inform it that a settlement had been reached,

---

[39] *Id.* at 11.

[40] *See* Docket No. 264 Ex. 3, at 6-8.

[41] *Id.*

14

followed shortly thereafter by the filing of a joint status report informing the Court that the mediation was successful.  It was well after the mediation was concluded and drafts of the Settlement Agreement had been exchanged that Defendants first made mention of a disagreement.  Although the parties re-engaged in negotiations in January of 2013, these negotiations appear to have come after Defendants experienced a change of heart regarding their earlier agreement, and does not render the earlier agreement unenforceable.

## III.  CONCLUSION

It is therefore

ORDERED that Plaintiffs' Motion to Enforce the Parties' Nationwide Class Action Settlement (Docket No. 263) is GRANTED.  The parties are directed to file a joint motion for preliminary approval of the settlement on or before April 19, 2013.

DATED   March 22, 2013.

BY THE COURT:

_____

TED STEWART
United States District Judge

15